## RAY *v.* STATE OF INDIANA.

[No. 23,003.     Filed January 25, 1917.     Rehearing denied June 8, 1917.]

1. CONTEMPT.—*Appeal.*—*Questions Reviewable.*—On an appeal from a conviction for indirect contempt of court, where defendant did not question the sufficiency of the facts stated in the information in the trial court, such question cannot be considered.     p. 399.

2. CONTEMPT.—*Purging Contempt by Answer.*—*False Answer.*—In a prosecution for indirect contempt of court by the publication of an editorial in a newspaper, if the language used is not libelous *per se* and does not show upon its face that it was intended to apply to the court, and *innuendoes* are required to show such application, or if it is fairly susceptible of an innocent meaning so far as the court is concerned, the defendant may by sworn answer explain the language by showing that he used it in a sense not libelous and declare that he did not intend to impugn the motives or integrity of the court or to interfere with or embarrass its proceedings, and such answer must be taken as conclusive; and if the defendant swears falsely in such answer he may be punished for perjury.     p. 399.

3. CONTEMPT.—*Indirect Contempt.*—*Libel on Court.*—*Publication of a Newspaper Editorial.*—Where an editorial published in a newspaper stated that "a good pointer has reached us to the effect that Judge Collins tried to confine the grand jury until indictments were agreed upon but failed" and that "our information is that two members of the grand jury are holding out and refusing to indict and they will not sign the indictments. It requires five out of six members to find an indictment. Every known method of coercion has been used, we are told, to secure indictments, but so far it has failed. The grand jury is yet in session and many rumors are current that the jury wants to

adjourn, but the powers that be refuse to permit adjournment," such language does not require the use of *innuendoes* to make its application or meaning clear and was an attack on the official conduct of the court, which at the time was investigating election frauds, and the publication of the article constituted a contempt of court. p. 400.

4. CONTEMPT.—*Indirect Contempt.—Libel on Court.*—It is not necessary, in order that a published article attacking a court constitute contempt, that the language employed should have actually brought the court into disfavor and engendered a want of proper respect and regard for the court, or that it should have actually embarrased or impeded the progress of the court or the administration of justice therein, it being sufficient if the language used is of a character calculated to produce such effect. p. 404.

5. CONTEMPT. — *Punishment. — Power of Court.* — The right to punish for contempt is inherent in every court, as it is necessary to the preservation of order,. to the enforcement of judgments, writs and orders, and is essential to the due administration of justice. p. 404.

6. CONTEMPT. — *Indirect Contempt. — Criticism of Courts.* — So long as critics confine their criticism of a court to the facts and base them upon the court's decisions, they commit no contempt, but when they charge that judicial conduct was influenced by improper, corrupt or selfish motives, or that such conduct was affected by political prejudice or interest, the courts may exercise their power to punish for contempt in order to maintain their standing, dignity and usefulness in the administration of justice. p. 404.

From the Marion Criminal Court (44,161) ; *James A. Collins,* Judge.

Prosecution by the State of Indiana against George M. Ray. From a judgment of conviction, the defendant appeals. *Affirmed.*

*Milton L. Clawson,* for appellant.

*Evan B. Stotsenburg,* Attorney-General, *Omer S. Jackson* and *Alvah J. Rucker,* for the State.

LAIRY, C. J.—This is an appeal from a judgment of the Marion Criminal Court by which appellant was convicted of an indirect contempt of that court by the publication of an editorial in a newspaper of general circu-

lation known as the Herald, of which appellant was the editor.

The facts constituting the alleged offense were brought to the knowledge of the court by an information duly verified and filed by the prosecuting attorney. Upon the filing of the information an order was entered by the court ordering the appellant to show cause why he should not be punished for contempt, a copy of which order was served on appellant. Afterwards appellant appeared and filed his verified answer in discharge of the rule. After hearing argument on the sufficiency of the answer the record shows that the court made a finding of facts and filed the same and ordered the clerk to make such findings a part of the record. Thereupon the court issued an attachment for the defendant and, the sheriff having brought the appellant into court in obedience to said writ, the court found him guilty of contempt of court and fixed his punishment.

The editorial publication upon which the information for contempt was based was as follows:

"The Republicans are having a hard time getting the Marion County grand jury to 'come through' with batches of indictments against 150 democrats for alleged violations of the election laws. A good pointer has reached us to the effect that Judge Collins tried to confine the grand jury until indictments were agreed upon but failed. Our information is that two members of the grand jury are holding out and refusing to indict and they will not sign the indictments. It requires five out of six members to find an indictment. Every known method of coercion has been used, we are told, to secure indictments but so far it has failed. The grand jury is yet in session and many rumors are current that the jury wants to adjourn but the powers that be refuse to permit adjournment. It is said that several meetings have been held by officials to devise ways to force the grand jury to bring the desired indictments, all of which have failed. There has never been any talk in the jury

room about including two prominent Democratic politicians, however."

Appellant did not question the sufficiency of the facts stated in the information in the trial court and that question cannot be considered on appeal. By his verified answer appellant admitted the publication of the article, but he makes an attempt to show that the language was not used in such a sense as to reflect discredit or disrespect upon the court or the grand jury or to corrupt or embarrass or influence the administration of justice, and he avows that he had no intention by the use of such language to express contempt or disrespect for the court or grand jury or to bring either into public disfavor or disrepute, or to embarrass or influence the administration of justice. In cases of indirect contempt it has been held that the defendant may purge himself of contempt by a sworn answer denying the facts stated in the information or by setting up a state of facts consistent with his innocence and disavowing intention to show a disrespect for the court or to influence or to interfere with the due administration of justice. *Fishback* v. *State* (1892), 131 Ind. 304, 30 N. E. 1088; *Percival* v. *State* (1895), 45 Neb. 741, 64 N. W. 221, 50 Am. St. 568; *In re Walker* (1880), 82 N. C. 95, 9 L. R. A. (N. S.), note 1120, and cases cited:

If the language used is clear and explicit and is susceptible of but one meaning which is *per se* libelous and which is a direct charge against the court or jury, it would be trifling with justice to say that a publisher could admit the publication and purge himself of the contempt by denying that he intended the meaning which the language plainly and unmistakably conveys; but, if the language admitted is not libelous *per se*, if it does not show on its face that it was intended to apply to the court and *innuendoes* are

required to show such application, or if it is fairly susceptible of an innocent meaning so far as the court is concerned, the defendant may, by a sworn answer, explain the language by showing that he used it in a sense not libelous and declare that he did not intend to impugn the motive or integrity of the court or to interfere with or embarrass its proceedings and such an answer must be taken as conclusive. If he swear falsely he may be punished for perjury.

In view of the principles of law thus stated, we proceed to a consideration of the sworn answer of appellant. In this answer appellant states the conditions and circumstances which existed at the time the publication was made and attempts to explain the language used in such a way as to show that the publication was made in good faith and without any purpose or intent on his part of casting discredit on the prosecuting attorney, the grand jury or the court, and without any purpose of influencing or embarrassing the proceedings of the court in the administration of justice.

Appellant says that prior to the publication of the article, the Republican organization had held a meeting and appointed a committee charged with the duty of procuring evidence as to frauds perpetrated at the November election, 1914; and that such committee had been engaged in an attempt to secure and present such evidence to the grand jury as would result in the return of indictments against a large number of Democrats in the city of Indianapolis. He stated that the language to the effect that the Republicans were having a hard time getting the Marion county grand jury to "come through" with batches of indictments against 150 Democrats, for the alleged violation of election laws, was used in said publication with reference to efforts of the committee to obtain and present to the

grand jury sufficient evidence to obtain indictments; and that it was not intended to charge or say that the court, prosecuting attorney, or any one else was endeavoring to influence the grand jury by improper or corrupt means to return indictments.. So far as this language is concerned it is fairly susceptible of the meaning attributed by appellant, and, as so understood, its publication does not constitute a contempt of court.

By the language, "A good pointer has reached us to the effect that Judge Collins tried to confine the grand jury until indictments were agreed upon but failed," appellant says that he meant only to say that the Judge had attempted to confine the grand jury until it had reached some determination as to the indictments. Appellant states that at the time of such publication he believed that the court had the same right to order the grand jury to be confined until matters pending before it were disposed of that it had to confine a petit jury, and that such language was not intended as a criticism of the attempted action of the court and was not intended to impugn the motive of the court in attempting to confine the grand jury. The explanation thus given does not cover the language to which it refers. Appellant did not state what he meant by saying, "A good pointer has reached us," in connection with the statement that Judge Collins had attempted to confine the grand jury until indictments were agreed upon but failed. If the fact as stated that the judge had attempted to confine the grand jury until indictments were agreed to was to be regarded as a "pointer" as clearly stated, the writer must have intended to say and to be understood as saying that such conduct pointed out or indicated something. When the language we have been discussing is considered with the language immediately following it in the publication, its

meaning becomes obvious. The language referred to is as follows:

"Our information is that two members of the grand jury are holding out and refusing to indict and will not sign the indictments. It requires five out of six members to find an indictment. Every known method of coercion has been used, we are told, to secure indictments, but so far it has failed. The grand jury is yet in session and many rumors are current that the jury wants to adjourn, but the powers that be refuse to permit adjournment."

The sworn answer wholly fails to explain the language just quoted so as to show that it was susceptible of any meaning consistent with an honest, fair and impartial discharge of duty by the court and grand jury in respect to the proceedings then pending. The statements to the effect that every known method of coercion had been used to secure indictments, and the other statement that two members of the grand jury are holding out and refusing to indict, when coupled with the statement in regard to the "pointer" afforded by the action of the judge in attempting to confine the grand jury until indictments were agreed upon makes the meaning perfectly clear and plain to any reasonable mind. The language under consideration does not require the use of any *innunendoes* to make its application or meaning clear. It clearly means that there was an effort being made to coerce the grand jury and its members into returning indictments against which two of the members were holding out and that the conduct of Judge Collins in attempting to confine the jury until it agreed on indictments was a "good pointer" to indicate his connection with this effort and that he had been willing to use his official power to assist in accomplishing the end sought. Such language is an attack on the official conduct of the court, and its publication constitutes a contempt of court.

In a contempt proceeding for the publication of an alleged defamatory article relating to a court it was said by the Supreme Court of Illinois that it could not accept "as a reason for discharging the rule the disclaimer in the answer, or any intentional disrespect or any design to embarrass the administration of justice. The meaning and intent of the respondents must be determined by a fair interpretation of the language they have used. They cannot now escape responsibility by claiming that their words did not mean what any reader must have understood them as meaning." *People* v. *Wilson* (1872), 64 Ill. 195, 16 Am. Rep. 528. The Supreme Court of Michigan, in passing on the effect of a sworn answer filed by a defendant in which he sought to purge himself of contempt, said: "When language is susceptible of two interpretations or constructions and the party charged asserts under oath that he did not intend the article to be construed as alleged in the innuendoes he is purged of the contempt; but if the publication is fairly susceptible of but one construction, and its purport is to defame and degrade the court in the eyes of litigants and the public, his denial of any intended wrong does not operate to purge him of the contempt." *In re Chadwick* (1896), 109 Mich. 588, 67 N. W. 1071. While there is some conflict in the authorities, the overwhelming weight of judicial opinion is in accord with the law as thus announced. *Fishback* v. *State, supra; Territory* v. *Nugent* (1810), (La.) 1 Mart (O. S.) 103, 5 Am. Dec. 702; *People* v. *Wilson, supra; Sturoc's Case* (1869), 48 N. H. 428, 97 Am. Dec. 626; *In re R. W. Woolley* (1874), 11 Bush. (Ky.), 95, 111; *In re Chadwick, supra; In re Chartz* (1906), 29 Nev. 110, 85 Pac. 352, 5 L. R. A. (N. S.) 916, 124 Am. St. 915; *Hughes* v. *People* (1880), 5 Colo. 436, 9 L. R. A. (N. S.) 1119, note.

The application of the law as above stated necessa-

rily leads to the conclusion reached in this opinion. It is not necessary that the language employed 4. should have actually brought the court into disfavor and engendered a want of proper respect and regard for the court, or that it'should have actually embarrassed or impeded the progress of the court or the administration of justice therein. If the language used is of a character calculated to produce such effect, it is sufficient. *People* v. *Wilson, supra,* and cases there cited.

The right to punish for contempt is inherent in every court. It is necessary to the preservation of order, to the enforcement of judgments, writs and orders, 5. and therefore is essential to the due administration of justice. Fortunately, the occasion for the exercise of this power does not often arise, and it is seldom exercised by the courts except in extreme cases. So long as critics confine their criticism to facts and base them upon the decisions of the 6. court they commit no contempt no matter how severe the criticism may be; but when they pass beyond that line and charge that judicial conduct was influenced by improper, corrupt or selfish motives, or that such conduct was affected by political prejudice or interest, the tendency is to poison the foundation of justice and create distrust, and destroy the confidence of the people in their courts. A feeling thus engendered would create dissatisfaction with all judicial determination; it would affect the standing and usefulness of the courts; it would seriously and dangerously affect the administration of justice. It is therefore sometimes necessary for courts to exercise their power to punish for contempt, not for the sake of the judges nor to vindicate them, but in order to maintain the standing, the respect, the dignity, and the usefulness of the courts

through and by which justice is administered to the people.

It may be proper to say that this court in the consideration of the case has wholly disregarded what is designated as the finding of facts filed with the clerk of the trial court. The judgment is treated as resting solely upon the facts disclosed by the information and the sworn answer of appellant thereto.

The record shows no reversible error. Judgment affirmed.

NOTE.—Reported in 114 N. E. 866. Contempt: (a) by publication or statement reflecting upon a judge in the performance of ministerial duties, 15 Ann. Cas. 658; (b) disclaimer of intent as defense to a charge of contempt by newspaper publication, 13 Ann. Cas. 503, 9 Cyc 21, 25, 13 C. J. 34; (c) indirect contempt, language constituting, 9 Cyc 21, 13 C. J. 34; (d) power of court to punish, 9 Cyc 26, 13 C. J. 46.