STATE EX REL. STANTON *v.* MURRAY, JUDGE.
STANTON *v.* STATE OF INDIANA.

[Nos. 28,909, 28,943. Filed October 21, 1952.]

J. *Emmett McManamon*, Attorney General; *William T. McClain* and *John Ready O'Connor*, Deputy Attorneys General, for relator and for appellee.

*Henry R. Sackett*, of Gary, for respondents.

*David P. Stanton*, of Crown Point, pro se.

BOBBITT, J.—Relator and appellant herein, David P. Stanton, is the prosecuting attorney of Lake County, Indiana, and will hereafter be referred to as appellant.

Respondent herein, William J. Murray, is judge of the Lake Criminal Court and, for convenience, will hereafter be referred to as appellee when discussing both the original action and appeal.

Both are, and were, during the time of the alleged acts herein, candidates for re-election to their respective offices.

The original action, cause numbered 28,909, and appeal, cause numbered 28,943, are concerned with the same subject matter, and involve the same records of the trial court. They are so closely related that we may consolidate and dispose of them in one opinion.

It should be said in the outset that we have had no help in the appeal from the alleged brief filed in behalf of the appellee, State of Indiana.

On April 4, 1952 appellant, as prosecuting attorney, and in the performance of his duty as such, appeared in the Lake Criminal Court for the purpose of arguing a motion to quash in a certain criminal case pending in said court. At the opening of court on that day when the prosecuting attorney appeared, the court announced that it had come to his attention that "some days" prior to April 4, 1952, appellant was quoted extensively in a newspaper published in Lake County to the effect that he, as prosecuting attorney of Lake County, had not had cooperation from the judge of the criminal court, "that a climate of hostility existed in the courts, that obstructionist tactics were confronting him, that his efforts to do his job in this court had been met with sneers, ridicule, scorn, abuse, and personal vilification, and that the attitude of the judge of this court [Lake Criminal Court] toward law enforcement was intolerable, and that this judge's system of having mutual back-scratching pro-tem substitution of lawyers as judge pro-tem in this court all constitute roadblocks to effective law enforcement and that the conduct of this court [Lake Criminal Court] indicates that a person was right who had demanded, 'let's kick the rascals out.' "

The judge (appellee) then asked appellant if he was responsible for said article which had appeared in The Hammond Times on March 25, 1952, to which the appellant replied that he did not intend to stand and be interrogated on matters other than business pertaining to the prosecuting attorney, and that he would not answer any other questions than those pertaining to the business then before the court. Appellee then replied, "You have a constitutional right to answer or not" to which the appellant replied, "I do not want to answer." Appellee then said, "At this point, because I don't know if I should bar you from this Court room or whether I should cite you for contempt or whether I should be like the Irishman who was kicked by a mule and consider where it came from. I intended to do this yesterday but we were held up by a jury trial and before I hear any more cases or before I let you practice in this Court, I am going to decide what I am going to do about this article in the paper. I think, as an officer of this Court, you owe this Court an apology." After some further exchange of remarks between the appellee and appellant, and after the judge had told appellant that he had a right to leave the courtroom, he then said: "I [appellee] am not going to try anything before you [appellant] until you apologize to this court."

On April 7, 1952 appellant filed in this court his verified petition for writ of mandate and prohibition alleging therein that he, as prosecuting attorney, was present, ready, willing and able to present the argument which had been set on April 4, 1952 on said motion to quash, and that appellee arbitrarily refused to proceed in said matter or to permit appellant to attend the hearing or to participate therein, and further alleging that appellee refused to allow appellant to represent the State of Indiana in any matters pending in the Lake Criminal

Court until such time as the appellant apologized to appellee for the statements allegedly made by appellant and published in The Hammond Times concerning appellee as an individual and as a candidate for re-election to the office of Judge of the Lake Criminal Court, and therein praying that an alternative writ issue directing appellee to set the cause of State of Indiana vs. William Vinovich for hearing on said motion to quash and permit and allow the appellant to appear at said hearing and represent the State of Indiana therein.

On this petition we issued an alternative writ on April 9, 1952 commanding appellee, William J. Murray, as Judge of the Lake Criminal Court, to allow and permit appellant to appear as Prosecuting Attorney and participate in all criminal matters pending in the Lake Criminal Court.

On April 19th appellee filed his return which was verified on April 17th, 1952. Among other things appellee states in said return that "Relator [appellant] may participate in the Vinovich or any other case where defendant sits as judge so long as relator well demeans himself.

"The Vinovich case may be set at any time that the calendar of the court will permit on request of either party to that proceeding.

"With respect to the alternative writ and its command the defendant states that he presently is and will continue to be willing to permit participation by relator as prosecutor in any matters pending before defendant as judge in the Criminal Court of Lake County, Indiana, so long only as relator properly conducts himself in the court."

Appellee further states in his return that he is making no demand on appellant to apologize to him for anything and recognizes that appellant may appear as prosecuting

attorney in the Criminal Court of Lake County "so long as he remains such prosecutor and well conducts himself." Appellee further states that appellant is not suspended from practicing in said court, and no attempt will be made to prevent his full participation in any matter pending therein.

On April 17, 1952, the same day on which appellee's return was verified, appellant appeared before appellee in the Lake Criminal Court and argued a motion to dismiss in a criminal action there pending. At the completion of the arguments appellant was stopped by appellee as he was attempting to leave the courtroom and the following proceedings were had:

"In the Matter of David P. Stanton        No. 26387

"There had been set for argument in this Court on April 4, 1952, the motion to quash of the defendant, in the pending case of State of Indiana v. Vinovich as Cause No. 26007 herein.

"At the convening of the court on that day and the calling of said cause for such argument, David P. Stanton as the Prosecuting Attorney of this Judicial Circuit, appeared and the defendant and his counsel were present.

"It had come to the attention of the court that Mr. Stanton some days prior to April 4, 1952, was extensively quoted in the press in Lake County, Indiana, to the effect that as Prosecutor he had not had cooperation from the judge of this court, that a climate of hostility existed in the court, that obstructionist tactics here confronted him, that his efforts to do his job in this court had been met with sneers, ridicule, scorn, abuse, personal vilification, and that the attitude of the judge of this court toward law enforcement was intolerable and that the judge's system of having mutual back-scratching pro-tem substitution of lawyers as judge pro-tem in this court all constitute roadblocks to effective law enforcement and that the conduct of this court indicates that a person was right who had demanded 'let's kick the rascals out.'

"In view of that purported statement and the attitude of Stanton it purportedly reflected, this court felt and believed that it was proper before proceeding further with said Vinovich case to ascertain whether Stanton had or had not made such statements and what his attitude was as to the ability of the State of Indiana in the Vinovich case to secure fair and impartial consideration by the regular presiding judge of this court, and if Stanton said that he had make those statements or that they reflected his views and belief, the regular judge of this court intended, even if Stanton did not ask for a change of judge, to challenge himself in the cause.

"Accordingly, in open court, at the calling of the Vinovich case the court inquired of Mr. Stanton whether he was responsible for the remarks that appeared in the news article in The Hammond Times, on March 25, 1952, with reference to this court as above stated, whereupon Mr. Stanton replied, 'I am not here for any other business other than as prosecuting attorney to take up the business before this court', and when the court repeated its question to Stanton, he then stated, 'I will repeat to the court I do not intend to stand here and be interrogated other than the business pertaining to the prosecuting attorney. I will not answer any other questions other than the business before the court. I do not want to answer.' The court then stated, 'The court has a right to interrogate you', to which Stanton replied, 'Not at this point.' Said statements of Stanton were made in open court while the court was open for the transaction of business and engaged therein. They were stated in a rude, insolent and disrespectful manner. They interfered with and impeded the operation of the court, and if Stanton made the statements attributed to him in the press, they also interfered with and impeded the operation of the court.

"It is accordingly ordered that David P. Stanton be and he is hereby ordered attached and brought before this court to make such statements or showing in explanation, extenuation or denial of the foregoing which he may make in response thereto, and that the bailiff of this court and the sheriff of Lake

County, Indiana, are charged with attaching the said Stanton and producing him before this court forthwith.

"Judge: I want to know what answer if any you have to make.

"Mr. Stanton: The Prosecuting Attorney is now here present in open Court. In response to what the Court just read, I will say at the time and place referred to as read by the Court the statements made by the Prosecuting Attorney were not in a rude and insolent and vile manner, but they were make respectfully at all times with proper decorum, and the Prosecuting attorney stated to the court he knew no law that required him to remain present in the Court Room while the Court resorted to intemperate and vile language and felt I had a right to withdraw from the Court Room, and the Court said 'You have that right.' As Prosecuting Attorney of Lake County, my position was, and is that the Court has no right to use the bench as a rostrum from which to express opinions, or clamp the Prosecuting Attorney of this County into silence for his opinions outside of the Court Room concerning the Judge as a candidate for re-election. I claim the right outside of the Court Room to express opinions as any other citizen concerning the methods and operations of this court and I have at all times in my twenty-five years experience in practicing law, I have maintained the respect and dignity and decorum of all Courts including the Criminal Court, and even now my remarks to the Court have been in a respectful manner, and I have not used any innuendos; but proper respect for the Court does not require a man's opinion and his judgment of the Judge who temporarily occupies the position, to be tailored according to the opinions of the Court. I don't believe what your Honor has set forth in the minutes under any circumstances constitutes direct contempt of Court, and I believe the Court is using his power as a Judge to clamp into silence the opinions of others concerning his ability and integrity and skill and efficiency as the operator of the Criminal Court, and I deny Your Honor the right to summarily judge, as you already have done, and I am entitled to a ruling to show cause—

"Judge: What I am concerned about is your alleged statements that you were purported to have made in the newspapers.

"Mr. Stanton: I say that Your Honor has no right in the Court Room and occupying the rostrum, the bench as you do, has no right to interrogate in proceedings of this kind, anybody concerning statements he may have made outside of the Court not effecting pending causes. If Your Honor believes any statements I have made out of Court have constituted indirect contempt of court, the Court is required to have somebody swear to those statements; have the Court appoint three Judges, one of which will be selected. While I'm in Court on official business, I deny your Honor's right to interrogate me concerning possible differences existing between us. I have no right to ask Your Honor if he made such statements as 'Mad Dog', 'That nut upstairs', the 'Mad Man.' I have no right to ask Your Honor if you made such statements. I don't believe the Constitution, the laws of our Country, give Your Honor the right, and if it did give you any such right, the Court would be taking undue advantage of this person. I haven't sued Your Honor for slander. You have called me a liar, and Your Honor has no legal right to sit upon the bench and wrap yourself with the judicial robes, and clothe yourself with the Club of Contempt of Court, and bludgeon me into silence, when you call me a liar.

"Judge: I have a duty to protect this Court.

"Mr. Stanton: You are protecting yourself.

"Judge: I am protecting this Court, and want to know what you have to say about those newspaper articles.

"Mr. Stanton: I deny the Court's right to interrogate me in open court concerning the statements made outside of Court relating to the Court's capabilities as a candidate for re-election for public office.

"Judge: That's as far as you want to go?

"Mr. Stanton: That's as far as I want to go.

"Judge: The Court being now duly and fully advised in the premises thereupon finds David P.

Stanton guilty of a direct contempt of this Court, and fixes his punishment at a fine of $300.00, together with commitment in the County Jail for a period of three days.

"It is thereupon ordered, adjudged and decreed that David P. Stanton be and he now and hereby is adjudged guilty of a direct contempt of this Court, that he be and he now and hereby is fined in the sum of $300.00, and that he be and he now and hereby is confined in the county jail of Lake County, Indiana, for a period of Three days."

*First:* Considering the record before us as it applies to the original action, it appears from certain statements in appellee's return, as above set out, that he does not intend to continue the acts complained of in appellant's petition, and that he will permit appellant to appear in his court and perform his duties as Prosecuting Attorney. However, an examination of the entire record, both in the contempt proceedings and in the appeal, of which we take judicial notice, *Rooker* v. *Fidelity Trust Co., Trustee* (1931), 202 Ind. 641, 651, 177 N. E. 454; *Indianapolis Dairymen's Co-op.* v. *Bottema* (1948), 226 Ind. 260, 261, 79 N. E. 2d 409, 412, discloses conduct of appellee which speaks so loud that the statements in his verified return become but whispers.

It seems clear from the whole record before us that on the very first occasion when appellant appeared in appellee's court in a criminal matter subsequent to April 4, appellee attempted to prevent appellant from appearing there in violation of the alternative writ issued by this court on April 9, 1952 by the subterfuge of summarily sentencing him for direct contempt of court for the same identical acts for which he was expelled from appellee's court on April 4th. It clearly appears that respondent has attempted to use the power

of the court to punish for contempt to do indirectly the thing which he was prevented by the alternative writ from doing directly. Whether such action by appellee constitutes a contempt of this court is a question which is not presented and we are not called upon to decide.

The prosecuting attorney is a constitutional judicial officer, elected by the people, and he may be removed from office only by impeachment. Judges of courts cannot temporarily vacate the office by arbitrarily barring the prosecuting attorney from appearing in court so long as he properly conducts himself. *State ex rel. Spencer* v. *Criminal Court, Marion Co.* (1938), 214 Ind. 551, 556, 15 N. E. 2d 1020, 16 N. E. 2d 888.

In light of the entire record in the two cases here under consideration, we are of the opinion that in the interest of unimpeded justice the temporary alternative writ heretofore issued should be made permanent regardless of the statements in appellee's return.

*Second:* The appeal herein arises out of the action of the Lake Criminal Court in finding and adjudging appellant guilty of direct contempt of said court. The questions presented in this appeal involve not only the right of the court to enforce due respect for its authority, and punish acts which tend to impair and diminish such respect and interfere with the performance of its judicial functions, but they involve as well the preservation of personal liberty as against summary imprisonment, the right of free speech, and the proper limit which may be placed upon the discussion of the fitness of candidates for public office.

Six separate errors are assigned, all of which may be summarized as follows:

1. The trial court erred in overruling appellant's motion to reconsider its opinion and judgment.[1]

2. The trial court erred in overruling appellant's motion for a new trial.

We shall first consider the trial court's ruling on appellant's motion to reconsider.

A direct contempt of court is an act committed in the presence of the court, or so near thereto as to interrupt its proceedings, while it is in session. *Snyder et al.* v. *State* (1898), 151 Ind. 553, 52 N. E. 152; 17 C. J. S., Contempt, §3, p. 6, §25a, p. 33.

This court will accept as true the statement entered of record by the lower court of the matter constituting the contempt. *Blankenbaker* v. *State* (1929), 201 Ind. 142, 166 N. E. 265, but will also examine the record, if necessary, to determine whether the acts alleged to be contemptuous do, in fact, constitute acts of contempt. *Chula* v. *Superior Court in and for Orange County* (1952), 109 Cal. App. 2d 24, 240 P. 2d 398.

Appellant contends that the finding of the court is void for failure to recite the acts constituting contempt.

An examination of the record and finding in the case at bar fails to disclose a recital of specific acts of appellant or any facts surrounding any alleged acts of his which would sustain a judgment against appellant for contempt. There does, however, appear in the record a recital by way of conclusion by the court that appellant made certain statements in open court while the court was in session, and that the statements were made in a "rude, insolent and disrespectful manner."

---

[1] Acts 1879 (Spec. Sess.) ch. 35, §7, p. 112, §3-907, Burns' 1946 Replacement.

The mere recital of the conclusions of the court herein is not sufficient to satisfy the requirement that the acts constituting the alleged direct contempt shall be distinctly stated in the order of the court, but the finding' itself must recite in detail the acts found to have been committed and which constitute the contempt for which the defendant is punished. Section 3-907, Burns' 1946 Replacement, Acts 1879, (Spec. Sess.) ch. 35, §7, p. 112, *supra; Gallagher* v. *Municipal Court of City of Los Angeles* (1948), 31 Cal. 2d 784, 192 P. 2d 905; *People* v. *Tavernier* (1943), 384 Ill. 388, 51 N. E. 2d 528; *Smithwick* v. *Smithwick* (1940), 218 N. C. 503, 11 S. E. 2d 455; *People* v. *Harrington* (1939), 301 Ill. App. 185, 21 N. E. 2d 903.

Affidavits of persons who were present in the courtroom on April 4, 1952 and heard the statements and observed the conduct of appellant at the time and under the circumstances herein were filed by appellant with his motion to reconsider the court's opinion and judgment, and are a part of the record herein.

The affidavit of A. M. Tipton, who is a retired farmer and trucker, and who is accustomed to visiting the Lake Criminal Court and observing criminal proceedings, states that he heard and saw all of the acts, signs, words, gestures, and conduct of appellant and appellee; that appellant did nothing by word, sign, act, or conduct which could be construed as rude, insolent or disrespectful; that appellant at all times conducted himself properly and with respect to the court; and that appellee appeared very angry and insisted that appellant apologize. Affiant further states that he had observed the appellant in the courtroom many times and that his demeanor, attitude and respect toward the court was always that of a gentleman, and that his conduct on

April 4, 1952 was no different than on any other day when he had observed appellant in court.

The affidavit of Lawrence Gresh, who is a public officer of the city of Gary, Indiana, states that he was about fifty feet away from appellee and appellant on April 4th, and that he heard no loud or unusual statements from either of the parties, nor did he observe any unusual conduct on the part of either appellant or appellee.

The affidavit of Thomas Beggs, who is a retired electrical contractor, states that during the past three years he has been a visitor in the Lake Criminal Court, and that he was present on April 4, 1952 when appellant and appellee had a discussion concerning a newspaper article; that he at no time saw or heard appellant do or say anything in a rude, disrespectful or insolent manner, that he stood while addressing the court, did not move around and made no gestures; and that he frequently saw appellant in court and that his attitude, demeanor and actions were no different on April 4, 1952 than at any other time.

The affidavit of Herman Claussen, who is a retired automobile mechanic and was a visitor in the Lake Criminal Court on April 4, 1952, states that he had observed appellant in the trial of cases in said court on several occasions; that his conduct on April 4, 1952 was no different than on other occasions when he was in court, and that while addressing the court on April 4 he stood at the counsel table, did not walk about, did not use gestures nor raise his voice; that appellant said something about his being in court ready for trial, but appellee was speaking "rather loud" and wanted to know whether appellant was responsible for the article in The Hammond Times; that he finally said, "I won't let you

practice here until you apologize for the article"; that appellant then said, "That's your decision", and picked up his books and left the courtroom; that appellant at no time made any discourteous, rude or insulting remark to the court.

The affidavit of James J. Clark, who is a practicing attorney of Lake County, states that he heard and saw the entire conversation, acts, words, signs and gestures and all the conduct of both appellant and appellee in the courtroom on April 4, 1952; that appellant at no time was rude, insolent or disrespectful, that his attitude toward the court was courteous and respectful; and that at no time did the court admonish the appellant concerning his attitude, manner or demeanor, and that at no time did appellant interfere with or impede the operation of the court.

When the above statements of disinterested parties, under oath, are weighed against the conclusions of the court as recited in the record, we are forced to conclude that the acts of appellant herein do not constitute acts of direct contempt.

We recognize that while certain statements in and of themselves might not constitute direct contempt of court, they might, if made in a rude, insolent and disrespectful manner, constitute direct contempt because of the manner in which the words were spoken. However, it appears from the record here that no such manner or conduct was employed by appellant at the time he made the statements referred to in the court's record.

The legislature in Indiana has, by statute, defined direct contempt and provided a procedure for the trial of one charged with such an offense. Acts 1879 (Spec. Sess.) ch. 35, §§1, 2, 6, and 7, §§3-901, 3-902, 3-906, 3-907, Burns' 1946 Replacement.

An examination of the record before us fails to disclose any action by appellant in the presence of the court which, when measured by the specifications laid down by the legislature in §3-901, *supra,* could, even by the most liberal construction, be said to constitute acts of direct contempt, nor could such acts be so considered under any rule of law.

It clearly appears from the statements of appellee that in finding appellant guilty of direct contempt the court considered matters which occurred not only out of the presence of the court but which occurred outside of the building in which court was being held, and at a time thirteen days prior to the date on which appellant was found guilty.

Appellant contends that the attempt of the court to use its power to punish him under the circumstances in this case violates his right to free speech as guaranteed by both the federal and state constitutions and, in determining this question, we must weigh the right of free speech against the dangers of coercion and intimidation of courts as it appears from the factual situation presented by the record before us.

While it is the duty of an attorney to show proper respect to the court, it is likewise the duty of the court to show due respect and consideration to an attorney.

The rule which sets the measure of when the right of free speech ends and the right of punishment for contempt attaches, was ably stated by Justice Frankfurter as follows:

> "The decisive consideration is whether the judge or the jury is, or presently will be, pondering a decision that comment seeks to affect. Forbidden comment is such as will or may throw psychological weight into scales which the court is immediately balancing. . . . In the situation before us, the scales

had come to rest. The petitioners offended the trial court by criticizing what the court had already put in the scales, not by attempting themselves to insert weights."

*Pennekamp* v. *Florida* (Concurring opinion) (1946), 328 U.S. 331, 66 S. Ct. 1029, 90 L. ed. 1295, 1315.

In the case at bar it is difficult to conceive how appellant, either by his actions in the courtroom or by the statement which appeared in The Hammond Times, could have disturbed the trial court in its sense of fairness, or influenced it in the decision of any case then pending before it. If there was any offense to appellee it resulted from criticism by appellant of what appellee, as judge, had already "put in the scales." There is no evidence here that appellant was attempting to "insert any weights."

Judges who seek re-election must run on their record. They may expect to be criticised and discussion of their conduct is both appropriate and desirable.

One of the prerogatives of American citizenship is the right to criticise public men, and it is essential to our form of government that the record of a candidate for office be subject to scrutiny and unlimited discussion subject only to the law of libel.

The Supreme Court of the United States in *Craig* v. *Harney* (1947), 331 U. S. 367, 67 S. Ct. 1249, 91 L. ed. 1546, 1550, said:

"The history of the power to punish for contempt . . . and the unequivocal command of the First Amendment serve as constant reminders that freedom of speech and of the press should not be impaired through the exercise of that power, unless there is no doubt that the utterances in question are a serious and imminent threat to the administration of justice."

The words of caution uttered by Mr. Chief Justice Taft are relevant here: "The delicacy there is in the judge's deciding whether an attack upon his own judicial action is mere criticism or real obstruction, and the possibility that impulse may incline his view to personal vindication are manifest." *Craig* v. *Hecht* (1923), (Concurring) 263 U. S. 255, 279, 68 L. ed. 293, 300, 44 S. Ct. 103.

A situation similar to that in the case at bar was before the Supreme Court of Wisconsin in *State ex rel. Ashbaugh* v. *Circuit Court of Eau Claire County* (1897), 97 Wis. 1, 72 N. W. 193, 38 L. R. A. 554. In that case, at a time when the judge of the Circuit Court was a candidate for re-election, a lawyer who actively practiced in said court published an article in a newspaper charging the judge with being extravagant in the management of the court, with being partial and unfair in respect to his official conduct in the trial of cases, and with being influenced by corrupt motives. These charges all referred to proceedings and cases which had already been heard and decided, and did not pertain to matters then pending before the court. Subsequently, through the publication of said article, a newspaper ran an editorial covering the same subject matter. Both the lawyer and the editor of the newspaper were cited by the judge and charged with the commission of a criminal contempt. They were ordered to appear and show cause why they should not be punished for such alleged contempt. Both the editor and attorney appeared at the time set for hearing and when the court convened an alternative writ of prohibition from the Supreme Court was produced and served upon the presiding judge. Thereupon the judge announced that he would not proceed further with the pending proceedings, but at once made an order adjudging both the editor and

lawyer guilty of direct contempt for the reason that they had filed affidavits alleging the truth of the published articles. At page 196, 72 N. W. 193, *supra,* the Supreme Court of Wisconsin said:

"Important as it is that courts should perform their grave public duties unimpeded and unprejudiced by illegitimate influences, there are other rights guaranteed to all citizens by our constitution and form of government, either expressly or impliedly, which are fully as important, and which must be guarded with an equally jealous care. These rights are the right of free speech and of free publication of the citizen's sentiments 'on all subjects' (Const., U.S. Amend. 1; Const. Wis. art. 1, §3) ; the right of trial by jury (Const. Wis. art. 1, §§5, 7) ; also the right to freely discuss the merits and qualifications of a candidate for public office, being responsible for the abuse of such right in a proper action of law. In the present case it is of the utmost importance to bear in mind that Judge Bailey was a candidate before the people for re-election. Had he been a candidate for any other office it would not be contended by any one that the publications in question would afford ground for any other legal action than an action for libel in the regular course of the law; but the claim is that because he was a judge, and was holding court at that time, such unfavorable criticism of his past actions may be summarily punished by the judge himself as for contempt. Truly, it must be a grievous and weighty necessity which will justify so arbitrary a proceeding, whereby a candidate for office becomes the accuser, judge, and jury, and may within a few hours summarily punish his critic by imprisonment. The result of such a doctrine is that all unfavorable criticism of a sitting judge's past official action can be at once stopped by the judge himself, or, if not stopped, can be punished by immediate imprisonment. If there can be any more effectual way to gag the press, and subvert freedom of speech, we do not know where to find it. Under such a rule the merits of a sitting judge may be rehearsed, but as to his demerits there must be profound silence. In our judgment, no such divinity as

this 'doth hedge about' a judge; certainly not when he is a candidate for public office."

In the case at bar, as in the Wisconsin case, the statement complained of contained only criticism of the general character of the judge and of the conduct of his office. Likewise, as in the Wisconsin case, appellee is a candidate for re-election as judge of the Criminal Court of Lake County. We approve the statement of the Supreme Court of Wisconsin as above quoted and believe it applies with equal force in the case at bar.

In *Francis* v. *People of Virgin Islands* 3 Cir., (1926), 11 Fed. 2d 860, 865, (Certiorari denied, 273 U. S. 693, 47 S. Ct. 91, 71 L. Ed. 843), it is said:

"In our jurisprudence, the extraordinary action of contempt of court does not lie to heal the wounded sensibilities of a judge; it may be invoked only when the offending act impedes or disturbes the administration of justice."

Judges in Indiana are elected, and every citizen may fully and freely discuss the fitness or unfitness of all candidates for office; they may criticise freely all decisions rendered and, by legitimate argument, establish their soundness or unsoundness, and comment on or discuss the efficiency or inefficiency, the fidelity or infidelity with which judicial officers discharge their duties. To hold otherwise would be a restriction of freedom of speech and of the press which is so necessary to the preservation of our system of government in its integrity. On the other hand, as stated by Judge Lairy, in *Ray* v. *State* (1917), 186 Ind. 396, 404, 114 N. E. 866, 869,

"The right to punish for contempt is inherent in every court. It is necessary to the preservation of order, to the enforcement of judgments, writs and orders, and therefore is essential to the due admin-

istration of justice. Fortunately, the occasion for the exercise of this power does not often arise, and it is seldom exercised by the courts except in extreme cases. So long as critics confine their criticism to facts and base them upon the decisions of the court they commit no contempt no matter how severe the criticism may be; but when they pass beyond that line and charge that judicial conduct was influenced by improper, corrupt or selfish motives, or that such conduct was affected by political prejudice or interest, the tendency is to poison the foundation of justice and create distrust, and destroy the confidence of the people in their courts. A feeling thus engendered would create dissatisfaction with all judicial determination; it would affect the standing and usefulness of the courts; it would seriously and dangerously affect the administration of justice. It is therefore sometimes necessary for courts to exercise their power to punish for contempt, not for the sake of the judges nor to vindicate them, but in order to maintain the standing, the respect, the dignity, and the usefulness of the courts through and by which justice is administered to the people."

But when, as here, a judge becomes a candidate for re-election public policy permits a full discussion of his past record, subject only to the law of libel and not to the law of contempt.

It follows from the foregoing that appellee erred in refusing to reconsider his opinion and judgment, and appellant's motion for such relief should have been sustained.

Having decided that the court erred in overruling appellant's motion to reconsider, it is not necessary to consider the ruling of the court on appellant's motion for a new trial.

All available evidence purports to be in the records before us and no good purpose could be served by granting a new trial should one be ordered.

THEREFORE: 1. The alternative writ of mandate heretofore issued in the original action, cause numbered 28,909, by this court is made permanent, notwithstanding appellee's (respondent's) verified return; and 2. The judgment of the trial court is reversed in cause numbered 28,943 in this court, and the Judge of the Lake Criminal Court is instructed to vacate said judgment and discharge the defendant (appellant).

Alternative writ made permanent and judgment reversed.

Draper, J., not participating.

Jasper, C. J., concurs with opinion.

## CONCURRING OPINION

JASPER, C. J.—I concur in the result reached in the majority opinion. Although the actions of the Prosecuting Attorney, a judicial officer, were not in keeping with the dignity of the office, his actions were not subject to being punished for a direct contempt of the court.

NOTE.—Reported 108 N. E. 2d 251.