JOHNSON A/K/A MORRISON *v.* STATE OF INDIANA.

[No. 769S162. Filed January 28, 1971. Rehearing denied March 12, 1971.]

*Robert G. Mann,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *R. Michael Bruney,* Deputy Attorney General, for appellee.

ARTERBURN, C.J.—This is an appeal from the Marion Criminal Court, Division One. Defendants were charged by affidavit with the crime of conspiracy to commit a felony, viz., second

degree burglary. The case was tried by jury and each defendant was found guilty as charged.

The facts most favorable to the State indicate that on March 13, 1968, the defendant Melvin Allison Johnson made acquaintance with Allen R. Watkins who was doing special investigation for the Indianapolis Police Department and the Federal Bureau of Investigation, of the Black Panther organization in Indianapolis. Pursuant to their meeting, which was at General Hospital in Indianapolis where Watkins was employed part-time, they had numerous conversations regarding racial relations in Indianapolis. Watkins joined the Panther organization and shortly thereafter met the defendant Omar Shabazz when target practicing with some of the organization's members.

Following a couple of preliminary meetings where plans were discussed, it was determined that the small group, including the defendants and Watkins, would meet on June 22, 1968, at a bar called the Nineteenth Hole. Those involved would bring their gloves and other equipment and then proceed to the Marine Armory. Arriving at the Marine Reserve Training Center, the men gained entrance into a building marked "explosives". Once inside, however, they discovered the building contained only paint and thinners. They went to another building, but heard voices and decided they had better not break in at that time. The next day, June 23, 1968, they decided to return to the Training Center where they again broke in, using their equipment. Upon gaining entrance into the building this time, they were confronted with officers of the Indianapolis Police Department and FBI agents. Defendant Shabazz and Watkins were immediately taken into custody, but defendant Johnson ran from the scene. He was apprehended shortly thereafter.

The appellants first argue on this appeal that they were denied a fair trial because their motions for discovery and for taking depositions of state's witnesses were denied.

In *Bernard* v. *State* (1967), 248 Ind. 688, 230 N. E. 2d 536, and in *Antrobus* v. *State* (1970), 253 Ind. 420, 254 N. E. 2d 873, we established the principle that a defendant is generally entitled to a complete list of the names and addresses of state's witnesses. In the case before us, the defendant got such a list. It was held in the *Bernard* case that discovery in favor of the accused is not required by the constitutional guaranty of due process, but may be granted by the trial court, and in so doing it is the duty of the trial court to regulate the proceedings commensurate with the rights of both the State and the defendant. Burns' Indiana Stat. Anno. § 9-1610 (1956 Repl.), states that a defendant by "leave of court" or by written notice to the prosecuting attorney, may take the depositions of witnesses to be used at the trial.

In *Amaro* v. *State* (1968), 251 Ind. 88, 239 N. E. 2d 394, 397, Judge Lewis, speaking for this Court, stated:

> "This result does not imply, however, that the Trial Court has no control over the exercise of the privilege granted the defendant. It is significant that the legislature did not state that the defendant *shall* be permitted the taking of depositions of any witness, but rather stated that he *may,* by leave of court or by notice to the prosecuting attorney, take the deposition of witnesses residing within or without the state. We believe that this distinction in the language provides, consistent with the traditions of the common law in this area, for a selective and discriminating control by the Trial Court...."

The trial court in this case heard evidence and arguments of the parties involving the respective interests of the parties in the granting or the denial of the petition. Part of the testimony presented by the prosecuting attorney was that one or more of the witnesses had been threatened, had his tires slashed, and had been offered a bribe and a change of jobs if certain testimony was changed. In other words, harrassment of witnesses as well as the possibility of a "fishing expedition" are factors which a trial court

may take into consideration in the granting or denial of a motion for discovery such as we have here. As stated previously, it is not an absolute and unconditional right. Both parties are entitled to the protection of the court in order that the evidence may be presented without coercion or threats.

> "It is, of course, true that we are searching for the truth in any criminal case. However, there are balancing factors which must be taken into consideration in the operation of such a rule." *Noel* v. *State* (1966), 247 Ind. 426, 431, 215 N. E. 2d 539, 543.

We find the trial court did not err in denying the motions to take depositions of state's witnesses under the circumstances presented to the court in this case. The court had the right to consider the harrassment and threats to which such witnesses might be subjected.

The appellants next contend that the judgment of the trial court should be reversed on the basis that the State failed to establish a "chain of custody" or to properly identify or authenticate a taped recording of the defendants' conversations that was admitted into evidence. We find that the trial court did not abuse its discretion in admitting this evidence. In *Guthrie* v. *State* (1970), 254 Ind. 356, 260 N. E. 2d 579, 584, we stated:

> "Appellee has cited several cases the holdings of which indicate that all possibility of tampering need not be excluded; upon reasonable assurance that the exhibit has passed through the various hands in an undisturbed condition its admission is proper and any remaining doubts go to its weight only."

The recording was introduced to corroborate the testimony of the prosecution's chief witness, Allen R. Watkins. Watkins testified that the recording was of a conversation between himself and the three defendants and that said conversation was recorded in its entirety. He also testified that he knew the whereabouts of the recording at all times since the taping,

that it was with him as it was played back at the FBI office and then in the Indianapolis Police Department offices, and also that he had control of it every day by means of a key to the office in which it was kept. This testimony was supported by the testimony of other witnesses and thus we find that there was no error on this point.

Lastly, the appellants maintain that they were not proved guilty beyond a reasonable doubt of conspiracy to commit second degree burglary. We find that there was sufficient evidence to convict them and that their defense of entrapment further substantiates this position. 21 Am. Jur. 2d., *Criminal Law*, § 143, states: "Entrapment is an affirmative or positive defense, and one that defendant must prove. It is in the nature of a confession and avoidance." Similar language is found in 10 ALR 3d 1121, *Larceny: Entrapment or Consent.*

We likewise hold that there was sufficient evidence from which the jury could properly reject the entrapment defense in this situation. There was ample evidence introduced to substantiate that the defendants originated the alleged conspiracy. We have stated concerning the defense of entrapment in *Minton* v. *State* (1966), 247 Ind. 307, 313, 214 N. E. 2d 380, 384:

"It is only where a person has been instigated, induced, or lured, for the purpose of prosecution, in the commission of a crime which he had no intention of committing that he may avail himself of the defense of entrapment. Where the criminal intent originated in the mind of the person committing the criminal act, an accused may not avail himself of this defense. *O'Brien* v. *U. S.* (1931), 51 F. 2d 674; *Ditton* v. *State* (1943), 222 Ind. 25, 51 N. E. 2d 356."

We find the jury properly concluded that the criminal intent originated in the minds of the defendants. The testimony showed that at the first meeting between defendant Johnson and Watkins, Johnson brought up the subject of the Black

Panther organization in Indianapolis. He discussed the possibility of Watkins bringing weapons into the city and in his joining the Black Panthers. At a later date, defendant Johnson told Watkins that he had checked with the group and that they had agreed that the Marine Armory would be the place to go and that this would be done on June 22, 1968. The defendants and Watkins proceeded to the Armory on that date, but were not able to accomplish their purpose since they heard voices and decided to leave. Later, Johnson suggested that the plan might be carried out on the next day, Sunday, June 23, 1968. This was agreed upon. This testimony, along with other testimony brought out in the trial proceedings, negated the possibility of entrapment, or at least permitted the jury to reject said defense.

Judgment is therefore affirmed.

Prentice, Givan and Hunter, JJ., concur; DeBruler, J., concurs in result.

NOTE.—Reported in 266 N. E. 2d 57.