Sherman H. SKOLNICK, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below),

and

Saul I. Ruman and Richard J. Lesniak,
Appellees (Intervenors Below).

No. PS 356.

Court of Appeals of Indiana,
Third District.

April 25, 1979.

Rehearing Denied June 7, 1979.

Sherman H. Skolnick, Chicago, Ill., for appellant.

Theo. L. Sendak, Atty. Gen., for Indiana.

Alembert W. Brayton, Deputy Atty. Gen., Indianapolis, for Saul I. Ruman and Richard J. Lesniak.

STATON, Judge.

Sherman H. Skolnick was convicted twice in the Porter Superior Court of direct criminal contempt on July 16, 1975. On July 21, 1975, Skolnick was convicted of direct criminal contempt for a third time. For each conviction Skolnick was sentenced to twenty-four hours' incarceration in the Porter County Jail.

Skolnick has appealed the three direct contempt convictions in two separate causes. As these two appeals, PSC 354 and PSC 356, are concerned with the same subject matter and involve substantially the same trial court records, they are closely enough related for consolidation and have been consolidated under Ind. Rules of Procedure, Appellate Rule 5(B).

PSC 354 addresses the two direct contempt convictions of July 16, 1975. In addition to alleging insufficiency of the evidence supporting the convictions (I.), Skolnick contends:

II. the trial judge failed to comply with direct contempt procedural requirements when he convicted Skolnick;

III. the trial judge erred in not providing Skolnick with counsel;

IV. the trial judge denied Skolnick his privilege against self-incrimination;

V. Skolnick was "entrapped" into committing direct contempt;

VI. the direct contempt convictions violated Skolnick's right to freedom of speech;

VII. the trial judge erred in quashing Skolnick's subpoenas duces tecum and in foreclosing Skolnick's further use of the subpoena process.

Skolnick appeals the July 21, 1975 direct contempt conviction in PSC 356. He alleges that the trial judge erred in failing to follow direct contempt procedure in three particulars:

I. the trial judge failed to file charges against Skolnick before convicting him of direct contempt;

II. the trial judge failed to set out in writing a distinct statement describing Skolnick's allegedly contumacious conduct;

III. the trial judge failed to hear evidence before convicting Skolnick and failed to prove him guilty of direct contempt beyond a reasonable doubt.

Skolnick alleges further:

IV. he was denied procedural due process because he had no notice of any charges pending against him when he was brought before the trial judge on the afternoon of July 21, 1975;

V. the trial judge erred in allowing Ruman and Lesniak to intervene in Skolnick's case;

VI. the conviction is invalid because of the trial judge's bias;

VII. he was denied his constitutional right to bail.

█ Having examined the issues presented,[1] we affirm the three contempt convictions.

### PSC 354

The record indicates that on July 16, 1975, Skolnick testified as a witness during a show cause hearing in *Portage National Bank v. Skaggs*.[2] Skolnick was called as a

---

**1.** Skolnick alleges further in PSC 356 that the trial judge denied him his right of appeal. Since Skolnick has proceeded with this appeal, we need not address that issue.

In addition, the State as appellee and Ruman and Lesniak, who have submitted an appellee's brief in PSC 356, contend that Skolnick's appeals should be dismissed because he failed to file motions to correct errors in these actions. However, Skolnick did file motions to reconsider the contempt convictions pursuant to IC 1971, 34–4–7–7, Ind.Ann.Stat. § 3–907 (Burns

Code Ed.). Since Skolnick has followed express statutory procedure in contesting his convictions, and since his motions to reconsider serve the substantial purpose of "afford[ing] the trial court the opportunity to rectify errors it has committed," *Bennett v. State* (1973), 159 Ind.App. 59, 304 N.E.2d 827, we sustain the appeals.

**2.** *Portage National Bank v. Skaggs*, No. 75–PSC–1233, was an action on a promissory note. Parties to the action were in court on July 16,

witness in the action by Anderson, counsel for the plaintiff Bank. Anderson examined Skolnick on how much help Skolnick gave to the defendants, who were appearing pro se, in preparing two motions they filed with the trial court. During the examination Skolnick stated in open court that he believed that the trial judge staged the calling of him as a witness in order to elicit testimony that could be used to charge Skolnick with the unauthorized practice of law. Skolnick also stated that he believed the trial judge to be corrupt and to have breached judicial ethics. For these remarks the trial judge found Skolnick twice in direct criminal contempt and sentenced him to two twenty-four hour jail terms.

Skolnick obtained bail on the evening of July 17, 1975. On Monday morning, July 21, Skolnick appeared before the trial judge for a hearing on his motion to vacate and reconsider the contempt orders of July 16. The trial judge confirmed the direct contempt convictions and ordered Skolnick back to the Porter County Jail to serve the remainder of the jail sentences imposed for the convictions.

### I.

### Sufficiency

Skolnick's first direct contempt conviction came after the following exchange in open court:

"MR. SKOLNICK: Judge, look, it is no secret that I'm investigating your corruption. He's trying to accuse me of practicing law as the chairman of a citizens group.

"THE COURT: Mr. Skolnick, answer the question.

"MR. SKOLNICK: I shouldn't be in this Court. You're trying to get me on something. You're trying to question me on irrelevant matters. If I had an attorney representing me, he would object to this.

1975 for a hearing compelling the defendants, Robert and Joy Ann Skaggs, to show cause why the plaintiff Bank should not take immediate possession of certain personal property in the Skaggses' hands. The transcript of the proceedings contained in the record is not com-

"THE COURT: Mr. Skolnick ____

"MR. SKOLNICK: It is no secret I've made public statements about you, I shouldn't be in this court and I shouldn't be here with you sitting on what I say and what I don't say.

"THE COURT: Mr. Skolnick, answer the question that's been put to you.

"MR. SKOLNICK: I have answered the question.

"THE COURT: Will you re-ask the question.

"Q. Whose idea, Mr. Skolnick, what it that this form be used for the filing ___

"A. I do not recall.

"Q. You do not know at all?

"A. And I don't feel safe at making answers in the presence of him when I've made public statements that I'm out to get him indicted. He being the Judge, Alfred J. Pivarnik.

"THE COURT: All right. Mr. Skolnick are you sitting here in this Court and calling me corrupt? Is that what you're doing?

"MR. SKOLNICK: I am of that opinion as the head of a citizens group. I've said it publicly that I believe you're corrupt. I believe that there's been the appearance of impropriety in respect to you and violation of judicial ethics and I believe that I, the member of the public, could make such comment outside of Court which I have.

"THE COURT: I'm aware of that. I'm aware of that. You're not outside of Court Mr. Skolnick, you're inside of Court, you're here as a witness.

"MR. SKOLNICK: But it's unfair for you to be ruling on me because you are trying to use him (pointing to Mr. Anderson) to ask me questions about what I do

plete; it begins with the examination of Skolnick and omits all proceedings occurring before then. The transcript indicates that Skolnick was examined exclusively on how much assistance he gave the Skaggses in preparing two motions they filed with the trial court.

as the head of the citizens committee to clean up the court which is not your business.

"THE COURT: Do you realize Mr. Skolnick enough about the law to know that you have just charged me with a very serious charge?

"MR. SKOLNICK: I have not charged you, I've said it as of my opinion___

"THE COURT: Are you telling me that I have set up this situation to have a lawyer come in here and set you up because of my corruption?

"MR. SKOLNICK: I have no personal knowledge but I'm of the belief that you did because it serves your purpose and if it serves your purpose, I'm entitled to believe____

"THE COURT: And what purpose are you refering [sic] to, Mr. Skolnick?

"MR. SKOLNICK: To discredit me so that my statements, such as I intend to make on the radio such as Alex Bottas [sic], my chief investigator has made and intends to make on WLNR this Thursday accusing you will be discredited and be reported in the paper that you threatened me with arrest or contempt for failure to answer this that or the other. All in respect that a charge that I've made which I'm entitled to make about your breach of judicial ethics. I'm entitled to have that opinion.

"THE COURT: Is that your opinion now? You're telling me that I did this?

"MR. SKOLNICK: I'm saying that I believe that you did it. I'm saying that we're investigating certain matters, we're a citizens group that has been involved for 13 years in investigating charges and our record is a matter of record. We have put 12 judges either off the bench or into jail. I'll give you a list of them if Your Honor wants to know. Since that is so, he serves your purpose whether you conspired exactly or not this man, Mr. Anderson, serves your purpose to discredit me by asking about what I do as the head of the citizens committee to clean up the courts in respect to members which is not your business or Mr. Anderson's."

Skolnick was again convicted of direct contempt a short time later for this assertion in open court:

"MR. SKOLNICK: I'm saying that you as a corrupt judge staged this to arrest me, that's what I'm stageing [sic]. I want to get some help."

Indiana statutes define direct criminal contempt as follows:

"34–4–7–1 [3–901]. Direct—Disturbing business of court.—Every person who shall, by the commission of any felony, misdemeanor, or other unlawful act; or who by talking, moving about, or by signs, or gestures, or in any other manner, in any court of record, while the same is open for the transaction of business, and engaged therein, create any noise or confusion therein, whereby the business and proceedings of said court shall be disturbed, shall be deemed to be guilty of a direct contempt of said court."

"34–4–7–2 [3–902]. Direct—Refusing to testify—Demeanor on witness stand.— Every person who, being sworn to testify as a witness in any court of record, in any trial or proceeding therein, shall refuse to testify touching the same; or who, being required by any court to be sworn in any such trial or proceeding, shall refuse to take an oath or affirmation therein; or who, while upon the witness stand, shall purposely so demean himself, as to retard or disturb the proceeding thereof, shall be deemed guilty of a direct contempt thereof."

These statutory definitions are not all-inclusive of what constitutes direct criminal contempt; they are merely legislative recognition of the court's inherent power to cite and punish for contempt. *McIntire v. State* (1967), 248 Ind. 142, 223 N.E.2d 347; *LaGrange v. State* (1958), 238 Ind. 689, 153 N.E.2d 593. Indiana courts have ruled further that one may be in direct contempt for filing in open court pleadings containing contumacious statements. *Kerr v. State* (1923), 194 Ind. 147, 141 N.E. 308. In *In re Perrello* (1973), 260 Ind. 26, 291 N.E.2d 698, direct contempt was deemed to be "any act which manifests a disrespect for and defi-

ance of a court." 260 Ind. at 29, 291 N.E.2d at 700. The act must be committed in the presence of and with knowledge of the court.[3] *Brennan v. State* (1961), 242 Ind. 79, 173 N.E.2d 312.

After examining the record we conclude that Skolnick's conduct warranted his two convictions for direct criminal contempt. As a witness Skolnick stated in open court that the trial judge was corrupt; that the trial judge was guilty of a breach of judicial ethics; that he staged the calling of Skolnick as a witness for improper purposes; and, that Skolnick had made public statements to the effect that he was out to get the trial judge indicted. These statements were made in the presence of the trial judge, and they retarded the progress of the *Skaggs* proceedings. The trial judge acted properly in summarily and immediately convicting Skolnick in order to preserve order in and respect for the court.

In concluding that the evidence before us is sufficient to affirm the two direct contempt convictions, those questions remaining for our consideration concern whether any alleged procedural irregularities, violation of Skolnick's constitutional rights, or abuses of discretion will work to overturn the convictions.

## II.

### Contempt Procedure

Skolnick alleges that the trial judge failed to satisfy certain procedural requirements when he convicted Skolnick of direct contempt. Specifically, Skolnick maintains that the trial judge never set out a written statement describing the allegedly contumacious conduct and never gave Skolnick the opportunity to respond to the charges before convicting him. The record reflects that the trial judge made no written statement before he convicted Skolnick, but that he did make one on Monday morning, July 21, before the hearing on Skolnick's motion to vacate and reconsider.

IC 1971, 34-4-7-7, Ind.Ann.Stat. § 3-907 (Burns Code Ed.), sets forth the procedure a court must follow before and after it convicts for direct contempt. Before an individual may be convicted of direct contempt, the court must,

"distinctly state the act, words, signs or gestures, or other conduct of the defendant which is alleged to constitute such contempt; and such statement shall be reduced to writing . . . together with any statement made in explanation, extenuation, or denial thereof, which the defendant may make in response thereto; . . . "

When a trial judge convicts, he must set out in writing a "distinct" statement describing the allegedly contumacious conduct and any statement of the alleged contemnor made in denial, explanation or extenuation. A trial judge's recital of mere conclusions as to the conduct is not a sufficient statement. *See, e. g., State ex rel. Stanton v. Murray* (1952), 231 Ind. 223, 108 N.E.2d 251 (statement reciting conclusion that appellant made statements before the court in a "rude, insolent and disrespectful manner" held insufficient); *see also State ex rel. Allen v. Vermillion Circuit Court* (1967), 248 Ind. 258, 226 N.E.2d 324. The purpose of the statement is to provide a record for review of the conviction. This review may be before the trial court on a petition to reconsider or the review may be before an appellate court.

The requirement of a written statement describing the allegedly contumacious conduct is an important and fundamental step in an otherwise summary procedure. *See State ex rel. Allen v. Vermillion Circuit Court, supra; Brennan v. State, supra.* The purpose behind the requirement is twofold. It provides the alleged contemnor with a concise record of why he was found in contempt and thus assists him in setting his course for an appeal. But more important-

---

**3.** Direct criminal contempt is distinguished from indirect criminal contempt in that the latter is an act committed outside the presence of the court which affects its proceedings, such as resisting process or influencing or intimidating a witness. *Brennan v. State* (1961), 242 Ind. 79, 173 N.E.2d 312; *LaGrange v. State* (1958), 238 Ind. 689, 153 N.E.2d 593.

ly, it works to diminish the possibility of arbitrary and rash action on the part of the trial judge, since he is forced to articulate the basis for his finding. The reviewing court is therefore provided with a clear statement of the nature of the allegedly contumacious conduct. The trial judge's observance of the requirement is vital when the statement or act is such that it would not ordinarily appear in a record of proceedings, as, for example, when a spectator commits the act or makes an insolent or obstreperous remark. In such cases the trial judge's written statement of the conduct is all that apprises the reviewing court of its nature.

■ Although the trial judge in the present case made no such written record of Skolnick's conduct before convicting him, we are easily able to discern the nature of that conduct from the transcript of the July 16 proceedings. The trial judge's failure in this respect does not hamper our ability to examine the instant case. Additionally, Skolnick's avenues of appeal have not been injured by the absence of a written statement; the substance of his motion to vacate and reconsider and the brief he submitted to us demonstrates his knowledge of the conduct for which he was convicted. Hence, Skolnick has not shown how he has been harmed by the absence of a written statement describing his conduct. The failure of the trial judge to provide one does not warrant reversal of the two direct contempt convictions.

### III.

#### Right to Counsel

We find no merit in Skolnick's contention that he was deprived of the right to assistance of counsel and that the trial judge erred fundamentally in not advising Skolnick of that right.

The Supreme Court of the United States ruled in *In re Oliver* (1948), 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682, that due process of law mandates that one charged with criminal contempt be afforded notice of the charges against him, the opportunity to meet them by way of defense or explanation, the right to examine witnesses against him, and the right to be represented by counsel. *Id.* at 273, 68 S.Ct. 499, 509. But the Court in *Oliver* also recognized a narrowly limited category of contempts wherein the trial judge is compelled to dispense with the procedural protection usually afforded criminal contemnors. This narrowly limited category,

> "includes only charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent 'demoralization of the court's authority * * * before the public.'"

Clearly *Oliver* excepts from the general due process standard those instances of contempt which Indiana's Legislature and courts have classified as direct. Skolnick's case falls within the bounds of this exception.

■ Skolnick had no right to counsel when he was initially sworn as a witness, since no charges of any sort were pending against him. *Pirtle v. State* (1975), 263 Ind. 16, 323 N.E.2d 634; *Winston v. State* (1975), 263 Ind. 8, 323 N.E.2d 228. His subsequent conduct in open court manifested a disrespect for the court and impeded progress in the ongoing *Skaggs* proceedings. In these circumstances the trial judge could properly have concluded that summary conviction and immediate punishment for direct contempt were necessary to restore order and to prevent " 'demoralization of the court's authority * * * before the public.'" *Oliver, supra,* 333 U.S. at 275, 68 S.Ct. at 509. The right to counsel does not attach when a trial judge is compelled to convict and punish summarily for direct criminal contempt. *Oliver, supra.*

Skolnick had the opportunity to employ counsel to represent him at the hearing on his motion to vacate and reconsider. He obtained bail on July 17, and he spent the interval between his release and the July 21 hearing preparing his motion and issuing

four subpoenas duces tecum. Since Skolnick had already been convicted of direct contempt, the failure of the trial judge to inquire before the hearing if Skolnick needed counsel cannot be considered error. We conclude that Skolnick was not deprived· of his right to counsel.

### IV.

#### Self-Incrimination

Skolnick also alleges that the trial judge abridged his privilege against self-incrimination when he was called as a witness in the *Skaggs* action. He argues that he was compelled to testify on matters unrelated to the *Skaggs* proceeding which could have incriminated him.

 We note initially that neither the record nor the transcript of the July 16 hearing provides us with even a clue as to why Skolnick was called as a witness by the plaintiff Bank in *Skaggs*.[4] It is eminently clear, however, that Skolnick was not called to answer to criminal charges, contempt or otherwise. At no time during examination did Skolnick attempt to invoke his privilege against self-incrimination, and as a witness in a civil proceeding, Skolnick was not entitled to an advisement of the privilege when he took the witness stand. His contumacious conduct was neither compelled by nor responsive to questions asked him by counsel for the plaintiff Bank. We therefore hold that Skolnick's privilege against self-incrimination was not abridged.

### V.

#### "Entrapment"

Skolnick presents two theories of entrapment for our review. The first theory is that the trial judge and counsel for the plaintiff Bank conspired to call Skolnick as a witness in order to elicit testimony which would support a charge of the unauthorized practice of law. As the present appeal does not involve any conviction for the unauthorized practice of law, the contention warrants no response from us.

Skolnick's second theory is that he was entrapped into committing direct criminal contempt when the trial judge asked him this question:

"THE COURT: All right. Mr. Skolnick are you sitting here in this Court and calling me corrupt? Is that what you're doing?"

Skolnick maintains that the trial judge's question entrapped him into giving a contumacious answer to it.

 Entrapment occurs when a defendant is induced or lured by a government agency, for the purpose of prosecution, to commit a crime he had no previous intention of committing. *Johnson v. State* (1971), 255 Ind. 589, 266 N.E.2d 57; *Minton v. State* (1966), 247 Ind. 307, 214 N.E.2d 380. The Maryland Court of Appeals ruled in *Grohman v. State* (1970), 258 Md. 552, 267 A.2d 193, that Grohman could validly interpose an entrapment defense to a charge of contempt because "the gravamen of this contempt is criminal in substance . . ." 258 Md. at 556, 267 A.2d at 195. *Grohman*, however, involved a contempt which was of an indirect, as opposed to direct, nature; the contempt charge stemmed from an attempt to divulge and sell grand jury testimony to a member of the public. The offense was committed outside of open court and out of the presence of the trial judge.

 In the present appeal we choose to give no validity to an entrapment defense which is interposed to a direct criminal contempt charge. One cannot be "entrapped" into obstructing court proceedings or displaying disrespect for a trial judge by insolent remarks or conduct. Skolnick's argument therefore fails.

### VI.

#### Freedom of Speech

Skolnick contends that the trial judge abridged his right to freedom of speech when he convicted Skolnick of direct contempt. His contention is without merit.

---

4. *See* footnote 2, *supra*.

 In determining whether Skolnick's First Amendment right has been violated, we must weigh the right of free speech against the dangers of coercion and intimidation of the court in the circumstances of the present case. *State ex rel. Stanton v. Murray* (1952), 231 Ind. 223, 108 N.E.2d 251. In *Ray v. State* (1917), 186 Ind. 396, 114 N.E. 866, the Indiana Supreme Court discussed the point at which an individual's right of free speech must give way to a court's inherent power to protect itself:

"So long as critics [of court] confine their criticism to facts and base them upon the decisions of the court, they commit no contempt no matter how severe the criticism may be; but when they pass beyond that line and charge that judicial conduct was influenced by improper, corrupt, or selfish motives, or that such conduct was affected by political prejudice or interest, the tendency is to poison the foundation of justice and create distrust, and destroy the confidence of the people in their courts. A feeling thus engendered would create dissatisfaction with all judicial determination; it would affect the standing and usefulness of the courts—would seriously and dangerously affect the administration of justice. It is therefore sometimes necessary for courts to exercise their power to punish for contempt, not for the sake of the judges nor to vindicate them, but in order to maintain the standing, the respect, the dignity, and the usefulness of the courts through and by which justice is administered to the people."

186 Ind. at 404, 114 N.E. at 869. *See also State ex rel. Stanton v. Murray, supra.* The issue was also articulated by the Supreme Court of the United States in *Craig v. Harney* (1947), 331 U.S. 367, 67 S.Ct. 1249, 91 L.Ed. 1546:

"The history of the power to punish for contempt [citations omitted] and the unequivocal command of the First Amendment serve as constant reminders that freedom of speech and of the press should not be impaired through the exercise of that power, unless there is no doubt that the utterances in question are a serious and imminent threat to the administration of justice."

We conclude that the First Amendment's freedom of speech directive cannot be invoked to shield from contempt charges one who states in open court that the trial judge is corrupt and unethical. Through his conduct and statements at the July 16 hearing, Skolnick passed beyond the line of protected judicial criticism and fell within the bounds of direct criminal contempt.

## VII.

### Subpoenas

██ In preparation for the July 21 hearing on his motion to vacate and reconsider, Skolnick issued four subpoenas duces tecum. Two of these were served on local attorneys Ruman and Lesniak. Ruman and Lesniak were ordered to produce at the hearing documents relating to two cases unrelated to the contempt action. Ex parte and apparently before the hearing,[5] the trial judge granted Ruman and Lesniak's motion to quash the subpoenas duces tecum, and he ordered that Skolnick make a request to him in writing before issuance of any further subpoenas. Skolnick alleges that the trial judge's actions constitute reversible error. We disagree.

Criminal Rule 2(1) of the Ind. Rules of Procedure empowers the trial judge to quash or modify a subpoena duces tecum if it is "unreasonable or oppressive." In the present case the trial judge acted properly, within his discretion, in quashing the subpoenas duces tecum, since the only issue for determination at the hearing was whether Skolnick's conduct on July 16 amounted to direct criminal contempt. The documents sought by Skolnick through the subpoenas duces tecum were absolutely unrelated to this issue. We also note that, contrary to Skolnick's assertions, IC 1971, 34-4-7-7, Ind.Ann.Stat. § 3-907 (Burns Code Ed.), makes no provision for the testimony of

---

**5.** *See* footnote 7 *infra* and accompanying text.

witnesses at the hearing;[6] rather, a defendant may only present affidavits of persons who were present in court when the alleged contempt occurred and who heard or saw the conduct in question. The trial judge's action in quashing the subpoenas duces tecum neither contravened the provisions of 34–4–7–7 nor constituted an abuse of discretion.

▮ We furthermore conclude that the trial judge's order regarding Skolnick's further use of the subpoena process was not unreasonable. It did not, as Skolnick maintains, foreclose his further use of that process. In view of Skolnick's earlier exercise of it, the trial judge was justified in ordering that Skolnick make a written request to him before the issuance of any more subpoenas.

For these reasons set out above, we affirm the two direct contempt convictions of July 16, 1975.

### PSC 356

On the morning of July 21, at the conclusion of the hearing on Skolnick's motion to vacate and reconsider the July 16 direct contempt convictions, the trial judge affirmed the convictions and ordered Skolnick to return to the Porter County Jail to serve the remainder of the sentences imposed. On the afternoon of July 21, at approximately 1:15, a Porter County sheriff removed Skolnick from his jail cell and escorted him back to the courtroom. On the way to the courtroom the sheriff gave Skolnick copies of two motions which Ruman filed some time during the morning of July 21:[7] (1) a petition to intervene in Skolnick's case,

pursuant to Ind. Rules of Procedure, Trial Rule 24, or to appear as an *amicus curiae,* on behalf of himself and Lesniak; and (2) a motion to quash Skolnick's subpoenas duces tecum directed to him and Lesniak. The motion to quash also requested sanctions—expenses and attorney fees—under TR. 37 and TR. 45, for work Ruman and Lesniak performed in response to the subpoenas. The sheriff also handed Skolnick copies of orders signed by the trial judge which (1) permitted Ruman and Lesniak to intervene and allowed Ruman to appear as well as an *amicus curiae;* and (2) granted their motion to quash. On this latter order Ruman and Lesniak were awarded expenses and attorney fees, but the amount of the awards was not indicated. When Skolnick arrived at the courtroom, he learned that the purpose of the proceeding was to hear Ruman and Lesniak's motion for expenses and attorney fees. During the hearing, Skolnick was convicted of direct criminal contempt after the following exchange:

"MR. SKOLNICK: You allowed him to talk for a half an hour defaming me and I was the gentleman that didn't object. Then, when I start, every other word you allow him to object and I want to be allowed to make my defense to his statement.

"THE COURT: All right, now that we've each had our say on that____

"MR. SKOLNICK: I haven't had my say. He keeps interrupting me.

"THE COURT: I'm going to have my say Mr. Skolnick.

"MR. SKOLNICK: Go ahead.

"THE COURT: Now, we're here on that limited area. What happened in

---

**6.** 34–4–7–7 provides, in pertinent part, for the following post-conviction procedure:

"[I]f found guilty, the defendant shall have the right to except to the opinion and judgment of the court; and in all cases where the defendant may be adjudged to pay a fine of fifty dollars [\$50.00], or more, or to be imprisoned for such contempt, he shall have the right, either before or after the payment of such fine, or undergoing such imprisonment, to move the court to reconsider its opinion and judgment of the case, upon the facts before it, or upon the affidavits of any, or all

persons who are actually present and heard, or saw the conduct alleged to have constituted such contempt; . . . ."

**7.** There is no indication in the record as to the precise time these motions were filed or when they were granted. However, the following colloquy during the morning hearing seems to indicate that Ruman and Lesniak's motion to quash had been granted before the hearing:

"MR. SKOLNICK: I want to produce my witnesses.

"THE COURT: Mr. Skolnick, we are not going to hear witnesses___"

other cases, I told you this morning, I'll tell you now, if you have any issue to take up with this Court on the conduct of this Court in this office or for that matter, if you wish to take my entire public record and my personal life to the Supreme Court of the United States, you may do so and I will willingly come there and meet that board. Now, have [*sic*] having been said, we are not here to hear anything of _____

"MR. SKOLNICK: Well you brought up the relevance.

"THE COURT: Mr. Skolnick, we are here to hear this issue only.

"MR. SKOLNICK: Sir, will you start it back to the jail. You're not going to allow me to make my defense.

"MR. RUMAN: Ah____

"THE COURT: And I'm telling you now I don't want to hear any more.

"MR. SKOLNICK: Am I going to be allowed to make my statement____

"THE COURT: I;m [*sic*] sure now that you understand Mr. Skolnick that what contempt is and that if you make reference to these matters it will be contemptable [*sic*].

"MR. SKOLNICK: What matters?

"THE COURT: You will not any more refer to records not____

"MR. SKOLNICK: They're in my affidavit____

"MR. RUMAN: Your Honor, may it please the Court, he's been interrupting the court. He asked if you would send him back to jail because he can't make a defense, that's contempt. I'm going to ask the Court, send him back to jail and we'll delay hearing on this but find him in contempt for his conduct in making a statement that he can't make his proper defense. Let him sit in jail until he's satisfied he wants to come out and then we'll come over for a hearing.

"MR. SKOLNICK: He went on for half an hour defending and I didn't interrupt him.

"THE COURT: I'm trying to explain to you what this_____

"MR. RUMAN: I'm not_____

"MR. SKOLNICK: The issue of relevance is involved with these subpoenas and you have a personal interest. Common decency requires that another judge be put up to hear the questions of the subpoenas because you are going to be forced to rule on whether they testify in a matter where in explanation of the alleged contempt, I say that you were corrupt and the truth would be the defense.

"MR. RUMAN: May it please the Court___

"THE COURT: Do you want to state now, Mr. Skolnick, what you mean by saying to me that I have a personal interest? What do you mean by that statement?

"MR. SKOLNICK: It's obvious you have a personal interest. You're mentioned in my affidavit as being involved in this situation. Obviously you're going to award damages and not force them to testify because cross examination of them may bring out something about the corruption that I brought out in my affidavit.

"THE COURT: Mr. Skolnick____

"MR. SKOLNICK: You have a personal interest.

"THE COURT: You are again in direct and criminal contempt of this Court.

"MR. RUMAN: And I'm going to ask the Court to find him in contempt, Your Honor, and to not submit to his efforts to make the Court disqualify himself by continued attacks on the Court, again, a technique of Mr. Skolnick which can destroy the judicial system. I submit Your Honor, you could not permit yourself to be continually attacked. He's asked to be found in contempt again and jailed. I would _____

"MR. SKOLNICK: I said__I said this hearing was of no avail, I should go back there because he's not going to allow me to make a statement.

"THE COURT: The Court doesn't do things that people wants him to do. The Court does things the Law orders that he do. And this Court, Mr. Skolnick, is not

going to face a frontal attack by you or anyone else on it and prevent it and gag it from performing its proper function.

"MR. SKOLNICK: Why was I brought to a hearing?

"THE COURT: I've attempted to explain that to you time after time, you would not listen ------

"MR. SKOLNICK: I'm not allowed to be heard."

For his remarks and conduct Skolnick was found in direct contempt and sentenced to an additional twenty-four hours in the Porter County Jail.

Skolnick contends that his conviction for direct contempt on July 21 is invalid because: (I.) he was convicted without charges having been filed against him; (II.) the trial judge failed to set out in writing a statement describing the allegedly contumacious conduct; (III.) the trial judge without hearing evidence, did not prove beyond a reasonable doubt that Skolnick was guilty of direct criminal contempt.

### I.

### Charges

■ Direct contempt deals primarily with the maintenance of order and respect in the courtroom. *McIntire v. State* (1967), 248 Ind. 142, 223 N.E.2d 347. It is an act which disturbs or interrupts court proceedings during the time a court is in session. *Id.* Since under such circumstances a trial judge must act immediately to restore order and respect, he may convict and punish for direct contempt without ordering the filing of charges against the alleged contemnor and without conducting a trial of the matter. IC 1971, 34–4–7–7, Ind.Ann.Stat. § 3–907 (Burns Code Ed.), pertinently provides:

"When any person shall be arraigned for a direct contempt, in any court of record of this state, no affidavit, charge in writing, or complaint shall be required to be filed against him; but the court shall distinctly state the act, words, signs or gestures, or other conduct of the defendant which is alleged to constitute

such contempt; and such statement shall be reduced to writing either by the judge making it, or by some reporter authorized by him to take it down when made; and the same shall be substantially set forth in the order of the court on the same, together with any statement made in explanation, extenuation, or denial thereof, which the defendant may make in response thereto; and the court shall thereupon pronounce judgment, either acquitting and discharging the defendant, or inflicting such punishment upon him as may be consistent with the provisions of this act . . . ."

Thus, no affidavit, charge, or complaint need be filed when a trial judge convicts for direct contempt; rather, all that 34–4–7–7 requires is that the trial judge state in writing what constituted the contempt. Accordingly, Skolnick's argument is without merit.

### II.

### Distinct Statement

■ Skolnick argues further that although charges need not be filed, the trial judge in his case failed even to make the "distinct" statement of the conduct which 34–4–7–7 mandates.

The record does not indicate that the trial judge made the statement contemplated by 34–4–7–7 before he convicted Skolnick. We addressed this very issue in PSC 354, *supra.* In concluding in PSC 354 that the absence of a statement would not work to overturn the July 16 direct contempt convictions, we examined the purposes behind the requirement and observed the circumstances in which the contempt findings were made. As was the case in PSC 354, the record in the present case enables us to determine the nature of the allegedly contumacious conduct, and we have no indication that the absence of a written statement impaired Skolnick's appeal. We therefore conclude that as in the case of the July 16 convictions, the absence of a written statement will not overturn Skolnick's July 21 conviction.

### III.

### Proof Beyond a Reasonable Doubt

 Skolnick's contention that he was convicted without evidence having been presented against him and that the trial judge failed to prove him guilty of direct contempt beyond a reasonable doubt demonstrates Skolnick's misunderstanding of the nature of direct contempt proceedings. Citation and punishment for direct contempt is an entirely summary process; the offense may be punished immediately upon its occurrence, without further proof or examination beyond what is known to the presiding judge by his senses. *Brennan v. State* (1961), 242 Ind. 79, 173 N.E.2d 312; *Coons v. State* (1922), 191 Ind. 580, 134 N.E. 194. The Supreme Court of the United States expounded upon this principle in *Cooke v. United States* (1925), 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767:

> "To preserve order in the court room for the proper conduct of business, the court must act instantly to suppress disturbance or violence or physical obstruction or disrespect to the court when occurring in open court. There is no need of evidence or assistance of counsel before punishment, because the court has seen the offense. Such summary vindication of the court's dignity and authority is necessary. . . ."

*Id.* at 534, 45 S.Ct. at 394. Since there is no need of evidence other than what has occurred in open court and in the presence of the trial judge, the traditional standard of proof in a criminal trial, that of reasonable doubt, is inapplicable to direct contempt proceedings.

 We have examined the record in the present appeal; we have observed that on the afternoon of July 21 Skolnick accused the trial judge in open court of having a prejudicial interest in his case. Skolnick retarded the progress of the hearing through repeated interruptions of the trial judge. This evidence was sufficient to warrant the trial judge's action in punishing Skolnick for direct contempt.

Skolnick alleges further in PSC 356 that the direct contempt conviction is invalid because (IV.) the trial judge denied him his due process right to notice; (V.) the trial judge erred in allowing Ruman and Lesniak to intervene; (VI.) the trial judge was biased against him; and (VII.) he was denied his constitutional right to bail.

### IV.

### Notice

 Skolnick alleges he was denied due process of law because he had no notice of the sanctions hearing or of the matters to be determined therein until he was taken to the courtroom for the sanctions hearing. As examined *supra*, Skolnick was only apprised of Ruman's motions and the trial judge's rulings thereon as he was being escorted to the courtroom for the hearing. This was a denial of due process of law.

 In *Town of Walkerton v. N. Y. C. & St. L. R. R. Co.* (1939), 215 Ind. 206, 18 N.E.2d 799, the Indiana Supreme Court wrote:

> "Due process requires notice in some proper form and an opportunity to be heard before some tribunal, . . . [T]here must be a fair opportunity to be heard before the matter is finally determined. . . ."

215 Ind. at 214, 18 N.E.2d at 803. In *Kaiser Alum. & Chemical Sales v. Dickerhoff* (1964), 136 Ind.App. 258, 199 N.E.2d 719, the Indiana Appellate Court held that an attorney must be given adequate time to prepare a defense and file any motions pertinent to the cause. The denial of such preparation time is a denial of due process of law. Due process requires that the notice given a defendant must also give him an opportunity to make a defense. *State ex rel. Red Dragon Diner v. Superior Ct.* (1959), 239 Ind. 384, 158 N.E.2d 164. *See also Smith v. Indiana State Board of Health* (1973), 158 Ind.App. 445, 303 N.E.2d 50.

As the facts in the instant case demonstrate, notice to Skolnick of the sanctions hearing was non-existent. Skolnick had no opportunity to prepare a defense to the charges therein or respond to Ruman and

Lesniak's motion by way of a counter-affidavit. Ruman and Lesniak's motion to quash and petition to intervene had been filed and granted without the benefit of notice to Skolnick. On the morning of July 21, after the trial judge affirmed the July 16 direct contempt convictions and ordered Skolnick back to jail, Skolnick had no reason to anticipate further developments in his case. He learned of the later developments only on his way to the courtroom.

■ The State as appellee and Ruman, who has on behalf of himself and Lesniak submitted an appellee's brief in this appeal, contend that since the Monday afternoon hearing was civil in nature, the normal procedural protection afforded criminal defendants is inapplicable. Their argument is utterly without merit. The fundamental due process guarantees, notice and the opportunity to be heard, transcend any criminal-civil distinction.

■ Although we rule that Skolnick was denied due process of law, the denial will not work to overturn Skolnick's contempt conviction. Skolnick was convicted of direct criminal contempt because he accused the trial judge of having a prejudicial interest in his case and because he continually interrupted courtroom proceedings. A denial of due process, even a denial of the most fundamental of procedural protections, cannot excuse contumacious conduct. This is true even if the defendant asserts that the contumacious conduct was precipitated by the due process denial. *See Illinois v. Allen* (1970), 397 U.S. 337, 346–47, 90 S.Ct. 1057, 25 L.Ed.2d 353; *United States v. Seale* (7th Cir. 1972), 461 F.2d 345, 361–62.

### V.

### Intervention

We agree with Skolnick's contention that the trial judge erred in allowing Lesniak to intervene in Skolnick's case and in allowing Ruman to appear therein as both an intervenor and *amicus curiae.*

■ The trial judge in essence permitted parties to intervene in a criminal action which had concluded with Skolnick's convictions on July 16. A criminal contempt action is a proceeding separate and independent of the action from which it arose. *Allison v. State ex rel. Allison* (1963), 243 Ind. 489, 187 N.E.2d 565. This principle applies to direct as well as indirect contempt proceedings. *Matter of May* (1976), Ind.App., 358 N.E.2d 138. Skolnick's contempt action was thus a proceeding separate and independent of the *Skaggs* action. Furthermore, as examined earlier, a proceeding for direct contempt is summary in nature; conviction and punishment immediately follow the allegedly contumacious conduct, since its purpose is to quickly restore order in the courtroom. *Brennan v. State* (1961), 242 Ind. 79, 173 N.E.2d 312. Practically speaking, the contempt action was concluded with Skolnick's convictions on July 16.

Ruman and Lesniak premised their petition for intervention on Trial Rule 24 of the Ind. Rules of Procedure. TR. 24(B) details the requirements for permissive intervention. Barring any statute conferring a conditional right to intervene, permissive intervention may be allowed when "an applicant's claim or defense and the main action have a question of law or fact in common." TR. 24(B)(2). It is inconceivable how Ruman and Lesniak could have had a claim with a question of law or fact in common with an action for direct criminal contempt.

In *Ex parte Fennig* (1939), 216 Ind. 298, 23 N.E.2d 678, the appellant was convicted of criminal contempt for filing a pleading containing contumacious statements directed at a judge and a private party. On appeal, the judge and private party designated themselves "properly appellees herein" and sought to have the appeal dismissed. In upholding the appeal the Indiana Supreme Court asserted:

"This was a case of criminal contempt and should not have been either instituted or maintained for the benefit of these two individuals. They were not, in any sense of the word, parties to the judgment appealed from. The fact that the appellant may have made contemptuous

remarks and sought to injure them as individuals is no reason for making them parties to this appeal. The offense of the appellant was against the state. If . . [they] have been injured as individuals they have appropriate civil remedies for redress. . . ."

216 Ind. at 300, 23 N.E.2d at 680. *See also Allison v. State ex rel. Allison* (1963), 243 Ind. 489, 187 N.E.2d 565 (party harmed in the case of criminal contempt is the State and not a private individual). The trial judge in the instant case abused his discretion in allowing Ruman and Lesniak to intervene.

Additionally the trial judge committed the threshold error of permitting Ruman to appear in the case as both an intervenor and *amicus, curiae.* An intervenor is a party to the action with an interest in the subject matter of the suit. TR. 24. An *amicus curiae,* on the other hand, as an adviser of the court,

"is not a party to the suit, and has no control over it . . . [He] has no rights in the matter. He can file no pleadings or motions of any kind. He can reserve no exception to any ruling of the court, and of course cannot prosecute an appeal . . . [S]ince the *amicus curiae* can do nothing other than advise the court, no party to the action has any cause to complain if the court grants a stranger the privilege of being heard, since no action of such party can affect the legal rights of a party to the action. . . ."

*In re Perry* (1925), 83 Ind.App. 456, 462, 148 N.E. 163, 165.

The appearance of an individual in the dual capacities of intervenor and *amicus curiae,* with the discrepancy in protectable interests attendant to each, presents severe conflicts. The appearance of an individual in both roles is also susceptible to claims of bias, as the trial court is in effect calling for assistance from one who has an interest in the case's outcome. Allowing Ruman to appear both as an intervenor and as an *amicus curiae* was an abuse of discretion, and it should not have been permitted.

Despite the apparent error in the above circumstances, the direct contempt conviction cannot be reversed. The trial judge was compelled on July 21 to take summary action to prevent further disruption of the proceedings and to maintain the dignity and respect owing the court. The trial judge's error cannot justify Skolnick's contumacious conduct.

## VI.

### Bias

Skolnick submits that the trial judge's alleged bias against him mandates reversal of the direct contempt conviction.

Skolnick's contention fails, for he was convicted and punished for the offense immediately upon the occurrence of his contumacious acts. The trial judge would have had a duty to disqualify himself from presiding at the determination of the contempt charge if Skolnick's conduct had been of an indirectly contumacious nature or if he had chosen to wait until the end of court proceedings to cite Skolnick for contempt. In these cases the determination of whether Skolnick's actions constituted direct contempt would have been made by another, detached trial judge. See IC 1971, 34-4-8-1, Ind.Ann.Stat. § 3-911 (Burns Code Ed.) (special judge provisions in indirect contempt cases); *Mayberry v. Pennsylvania* (1971), 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (trial judge has a duty to disqualify himself from contempt determination when he does not act instantly to cite for contempt). *See also* Fed.R.Crim.P. 42(b) (federal judge disqualification provisions for other than summary contempt cases). In cases where the contumacious conduct disrupts court proceedings, the trial judge is not bound to disqualify himself before the contemnor can be punished; the trial judge may act instantly to restore order in the court. The need for order in the courtroom to be achieved through the effect of immediate citation for contempt overrides the possibility of bias on the part of the trial judge. *See United States v. Seale* (1972), 461 F.2d 345.

It is not necessary for us to address Skolnick's allegation that the trial judge's bias disqualified him from presiding at the sanctions hearing. For even the fact that a trial judge may be precluded from hearing a particular case does not eliminate his power to cite an individual for direct criminal contempt. *Allison v. State ex rel. Allison, supra; Matter of May, supra.*

## VII.

### Right to Bail

Skolnick finally argues that he was denied his constitutional right to bail following the trial judge's direct contempt finding. Inasmuch as direct contempt contemplates immediate conviction and punishment, any right to bail that Skolnick had would have been one pending appeal. And, there is no constitutional right to bail pending appeal. *Critchlow v. State* (1976) Ind., 346 N.E.2d 591.

As we affirm the July 21 direct contempt conviction, the issue of whether Skolnick was entitled to bail pending his appeal to this Court becomes moot.

Affirmed.

GARRARD, P. J., and SULLIVAN, J., concur with opinion.

GARRARD, Presiding Judge, concurring.

I concur with the majority except as to the dictum that *Mayberry v. Pennsylvania* (1971), 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 and its companion cases require the judge before whom the contempt occurs to disqualify himself unless he fully adjudicates the contempt instantly upon its occurrence. On the requirements of due process in that regard I adhere to my concurring opinion in *Jacobsen v. State* (1979), Ind. App., 384 N.E.2d 1041.

SULLIVAN, Judge, concurring:

I concur in the majority's affirmance of each of Skolnick's three contempt convictions. I feel compelled, however, to make several observations and statements which may serve to clarify my position and to set forth certain points at which my views depart from those of the majority.

The majority opinion separates its treatment by cause number and by numerical delineation of the issues. For simplicity, I will do the same.

### PSC 354

### ISSUE I

#### Sufficiency of Evidence

I agree that the evidence supports Skolnick's two contempt convictions on July 16, 1975.

### ISSUE II

#### Contempt Procedure

I would agree that the statutory requirement (I.C. 34–4–7–7) for a statement by the trial judge setting forth the contumacious conduct, together with whatever explanatory statement may have been made by defendant, has a purpose which is to provide a record for review. That may be the *only* purpose when, as here, the situation is such as to require immediate action by the trial judge. But when the situation requires the initial judge, before whom the alleged contempt was committed, to disqualify himself and requires determination by an "impartial" judge, the statement has another purpose. It provides the framework within which the hearing or trial is to be conducted. The "charging" statement by the initial judge serves to inform the defendant of the nature of the contempt charge. It is, in effect, the "notice" required by due process. I read *Brennan v. State* (1961) 242 Ind. 79, 173 N.E.2d 312, and *Garlin v. State* (1st Dist. 1975) 163 Ind.App. 570, 325 N.E.2d 515 to so hold. *See also State ex rel. Allen v. Vermillion Circuit Court* (1967) 248 Ind. 258, 226 N.E.2d 324, and *McWhirt v. Fearnow* (2d Dist. 1973) 158 Ind.App. 68, 301 N.E.2d 810. Only in this context does the statutory reference to a contempt defendant being "arraigned" have significance. I.C. 34–4–7–7, *supra.* It is at his "arraignment" that the defendant has an opportunity to make the statutorily recognized statement "in ex-

planation, extenuation, or denial" responding to the statement of the judge. Further, the defendant's explanatory statement may serve to confine the bounds of his "defense" against the allegations of contempt.

Subject to this caveat, I concur with the majority's treatment of Issue II.

### ISSUE III

#### Right to Counsel

I concur.

### ISSUE IV

#### Self-Incrimination

I concur.

### ISSUE V

#### Entrapment

While I agree that the entrapment defense is not available to Skolnick in this case, I do not agree with the broad statement by the majority: "One cannot be 'entrapped' into obstructing court proceedings or displaying disrespect for a trial judge by insolent remarks or conduct". (p. 1165). The possibility exists, albeit remote, that in certain situations a person might be baited or goaded by an over-zealous trial attorney or by a trial judge made momentarily indignant or vindictive. That person might humanly, but unwisely, retaliate with disrespectful or obstreperous words or conduct, which if purposeful would be directly contemptuous. In this sense one might be "entrapped" into contumacious conduct.

### ISSUE VI

#### Freedom of Speech

I concur.

### ISSUE VII

#### Subpoenas

Skolnick contends erroneously that under the provisions of I.C. 34–4–7–7 he "had the right to compel witnesses to appear for the purpose of establishing his defense . .". (App.Br. p. 73). As the majority points out,

the statute is silent with respect to direct testimony as opposed to affidavits. However, I do not believe that direct testimony is absolutely precluded. It is extremely unlikely that an appellate tribunal would find reversible error if the trial judge exercised his discretion and permitted live testimony, in lieu of a sworn written statement.

In addition, I must respectfully disagree with the majority's penultimate paragraph under this Issue. While I do not perceive the error to be reversible in that Skolnick has demonstrated no prejudice occasioned thereby, I believe the trial judge exceeded his authority in requiring Skolnick to obtain prior court permission before issuing further subpoenas duces tecum. Indiana Rules of Procedure, Criminal Rule 2(1) confers no such authority, nor does Indiana Rules of Procedure, Trial Rule 34, insofar as such Rule may be held applicable to direct criminal contempt. It appears to me that the trial judge may only quash or modify a subpoena duces tecum; he may not require that a party gain the blessing of the court before issuing a subpoena. A party or other person requested to produce documents, records, etc. has protection against burdensome or harassing subpoenas. Pursuant to T.R. 34, he may arguably move to quash or object to the request, or may recover damages, if appropriate. He may also arguably seek sanctions under Indiana Rules of Procedure, Trial Rule 37(B).

### PSC 356

### ISSUE I

#### Charges

Subject to the observations made with respect to Issue II under Cause Number PSC 354, I concur and agree that Skolnick's argument in this regard is without merit.

### ISSUE II

#### Distinct Statement

I concur subject to the views expressed in relation to Issue II under Cause Number PSC 354.

## ISSUE III

*Proof Beyond A Reasonable Doubt*

I concur and agree with the majority's statement that "Citation and punishment for direct contempt is an entirely summary process", so long as the statement is restricted to those direct contempts which must be determined and punished immediately.

## ISSUE IV

*Notice*

I concur.

## ISSUE V

*Intervention*

The sole purpose of Ruman's "intervention" was to obtain the relief afforded under T.R. 37(B)(2). Ruman was not in the proceeding as an intervening *party* pursuant to T.R. 24. As a result, the granting of amicus status to Ruman was surplusage and although perhaps erroneous did not diminish the propriety of Ruman's status before the Court as one seeking relief under T.R. 37(B)(2).

## ISSUE VI

*Bias*

Judge Staton's opinion states that a different and "detached trial judge" should make the determination if the conduct is of "an indirect contumacious nature" or if the judge waits until the end of court proceedings to "cite Skolnick for contempt". The need for a detached judge is also present when the original judge cites for contempt immediately but waits until the conclusion of the proceedings to impose the punishment.

The present state of the law did not arise out of logic. The trial judge is less likely to act out of indignation, anger or vindictiveness if the punishment or guilt determination is delayed, yet, it is only when the emotions are most likely to be at a peak, i. e., immediately following the courtroom outburst, that the trial judge is permitted to judge guilt and impose punishment. The rule of law does not, therefore, appear to be founded upon logic. Rather the rule seems to emanate from a delicate balance between practicality and policy. *See Cooke v. United States* (1925) 267 U.S. 517, 539, 45 S.Ct. 390, 69 L.Ed. 767 as quoted in *Jacobsen v. State* (3d Dist. 1979) Ind.App., 384 N.E.2d 1041, at 1048 (Garrard, J., concurring).

## ISSUE VII