**William R. PETERSON and John S. Thomas, Appellants (Respondents),**

v.

**STATE of Indiana, Appellee (Petitioner).**

**No. 4-484A98.**

Court of Appeals of Indiana, Fourth District.

Sept. 18, 1984.

Rehearing Denied Nov. 2, 1984.

---

Roger L. Miller, Miller & Redmond, Frankfort, Franklin I. Miroff, Ancel, Miroff & Frank, Indianapolis, for appellants.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

CONOVER, Judge.

William R. Peterson (Peterson) and John S. Thomas (Thomas) appeal the Clinton Circuit Court's judgment finding them in contempt of court.

Reversed.

ISSUES

This appeal presents the following issues:

1. Is it a contempt of court for an employee of a residential care facility acting with authority to sign the administrator's name to an application for emergency 72 hour mental health detention after he had been told by the judge only the administrator could sign the application?

2. Is it a contempt of court for the administrator to respond "yes, ma'am" when queried by telephone by the judge's court reporter as to whether he remembered signing such application the previous evening when in fact he had not personally done so?

FACTS

On October 31, 1983, a resident of a residential care facility in Frankfort began exhibiting conduct dangerous to the staff and other residents. That same day Thomas, an employee of the facility, presented an unsigned application seeking an emergency 72 hour mental health detention of the resident to the judge of the Clinton Circuit Court. The judge told Thomas the administrator of the facility must sign the application personally. Thomas then looked for Peterson to secure his signature on the document but was unable to locate him. Previously, Peterson had authorized Thomas to sign his name when it was necessary and Peterson was unavailable. Thomas signed Peterson's name to the application, and filed it with the local city judge. The next day, the application came to the circuit court judge's attention. He instructed his court reporter to contact administrator Peterson by telephone to determine whether Peterson had signed it. As to their telephone conversation, the court reporter under oath testified:

Q. O.K., did you ask Mr. Peterson a question concerning his signing a document for the commitment of [name omitted] the previous day?

A. Yes, I did.

Q. Do you recall the exact question?

A. Yes, he said, I asked him if, I said do you, did you remember signing the commitment for [name omitted], did you remember the commitment you signed for [name omitted] last evening?

Q. And what was ...

A. And his response was, "yes ma'am".

The contempt hearing was held December 27, 1983, eight days after the judge set it for hearing on December 19th. The judge himself heard this contempt proceeding.

Both men under oath confirmed their actions in this regard at the hearing. At its conclusion, the judge found both Thomas and Peterson guilty of contempt of court, fined each $100 and sentenced each to 24 hours in the Clinton County jail.

DISCUSSION AND DECISION

While appellants variously argue the trial court did not follow prescribed procedures for either direct contempt or indirect contempt proceedings (with which arguments we agree),[1] we prefer to discuss the substantive issues raised in this case. The record before us sufficiently presents them.

Under our standard of review in contempt matters we may interfere with a contempt judgment only where it clearly appears the alleged acts do not constitute contumacious conduct. *In re: Caito,*

---

1. If the acts complained of had been in fact actionably contemptuous, they would have been classified as indirect criminal contempts, *cf.* IC 34–4–7–3. These acts came to the judge's attention on November 1, 1983. The record indicates he took no further action by way of notice and hearing until 48 days later on December 19, 1983, when he set the matter for hearing on December 27th.

No rule to show cause or written statement defining the contumacious conduct ever was prepared by the judge and served upon or made available to Thomas and Peterson. These failures amount to a violation of the appellants' rights to due process. *Skolnick v. State,* (1979) 180 Ind.App. 253, 275–76, 388 N.E.2d 1156, 1170–1171, *cert. denied,* (1980) 445 U.S. 906, 100 S.Ct. 1085, 63 L.Ed.2d 323. Also, the judge himself presided at the contempt hearing. Under the circumstances, he had a duty to disqualify himself so that the matter could be determined by a disinterested magistrate. *Skolnick,* 180 Ind.App. at 279, 388 N.E.2d at 1172.

(1984) Ind., 459 N.E.2d 1179, 1182. Thus, the initial question is whether the acts complained of constitute contempt. As noted below, we find neither act was actionably contemptuous.

 IND. CODE 16–14–9.1–7 regarding who may sign an application for emergency 72 hour mental health detention reads in part as follows:

> Sec. 7. A person may be detained in a psychiatric hospital or center for a period not exceeding seventy-two [72] hours, excluding Saturdays, Sundays, and legal holidays, as follows:
>
> (a) Written application must be made to a hospital or center by a health or police officer *or other individual.* ... (Emphasis supplied.)

Under this statute Thomas himself could have executed the application for emergency detention. Thus, the trial judge's admonition Peterson, the administrator, had to sign it personally was not an enforceable order of court. While it may have expressed the judge's personal preference, his admonition did not conform to the law on the subject as it existed at the time. The law had been laid down clearly by the legislature in the statute. It left no room for interpretation.

Moreover, the fact Thomas signed Peterson's name and not his own does not render the document one bearing a false signature, as the State contends. It is undisputed Peterson had given Thomas authority to sign his name to documents when he could not be located, as was the case on the evening in question. Thomas was Peterson's special agent for those purposes. As such, he was authorized to sign Peterson's name and bind him, so long as Thomas acted within the powers granted him as special agent by his principal, Peterson. *Blackwell v. Ketcham,* (1876) 53 Ind. 184; 3 Am.Jur.2d *Agency* § 70; 2A C.J.S. *Agency* § 249, n. 73. Thomas acted within the terms of his special agency in this instance. Thus, Thomas was guilty of no contemptuous act.

 'Although a closer question, we also do not believe Peterson was guilty of actionable contempt. His response to the court reporter's question, if viewed literally, was at most a socially unjustifiable lie. However, his answer was not made under oath nor did it impede or impair the operation of the court. Also, because Thomas committed no contumacious act, Peterson's lying to the court reporter was, at best, *de minimus.*

In a strict legal sense, however, Peterson was not lying. Thomas's act of signing Peterson's name bound Peterson, the principal, as fully as if he had signed the application himself under the special agency relationship existing between himself and Thomas at the time. In either view, Peterson's affirmative answer does not rise to the level of actionable contempt.

Reversed and remanded with instructions to vacate the contempt judgments and dismiss all proceedings as to both Thomas and Peterson.

MILLER, P.J., and YOUNG, J., concur.